Phillip **SALVATIERRA,** as Next Friend of Robert Justin Salvatierra, a Minor, Appellant,

v.

**VIA METROPOLITAN TRANSIT AUTHORITY,** Appellee.

No. 04–96–00897–CV.

Court of Appeals of Texas, San Antonio.

April 22, 1998.

Ricky J. Poole, Les Mendelsohn, Mendelsohn & Jackson, P.C., San Antonio, for Appellant.

Lawrence Robert Linnartz, James M. Parker, Jr., Butler & Binion, L.L.P., San Antonio, for Appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

## OPINION

LÓPEZ, Justice.

This appeal addresses the issue of whether the Legislature may transfer a proprietary function of a municipality to a governmental function without violating the open courts or equal protection provisions of the Texas Constitution. We hold that it may and affirm the trial court's judgment.

### BACKGROUND

In 1990, Phillip Salvatierra and his wife were watching their three-year-old, Robert Justin Salvatierra, ride his tricycle on the sidewalk in front of their home. What happened next is disputed: VIA Metropolitan Transit Authority ("VIA") claims the youngster either rode into the path of the bus or was pushed into the street. In an affidavit opposing summary judgment, Phillip Salvati-

erra states he saw a city bus, owned and operated by VIA, attempt to make a right turn from 20th Street onto Ruiz Street, "when the driver improperly maneuvered the bus and 'jumped' the corner curb" and ran over the child. Robert Justin sustained a severe crush injury to his left leg, resulting in amputation above the knee, and numerous surgeries.

The Salvatierras sued VIA, its driver, and others under theories of negligence and product liability. A summary judgment, a trial, a non-suit, and a settlement have disposed of all parties except VIA. The trial court granted a partial summary judgment in favor of the plaintiff on the ground that a prior confession of judgment precluded VIA from disputing liability. With the issue of damages suffered by the minor child remaining to be determined, VIA tendered $100,000 into the registry of the Court and the trial court, on VIA's motion, entered a summary judgment which limited damages to that amount on a theory of sovereign immunity under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE § 101.023(b). On appeal, the appellant challenges the constitutionality of the cap on damages provided in the Texas Tort Claims Act as applied to a personal injury claim against VIA, claiming that the statute violates the open courts doctrine and the equal protection provision of the Texas Constitution.

## VIA: A BRIEF HISTORICAL SURVEY[1]

Until the middle of the present century, San Antonio's mass transportation was provided by private enterprise. In the late nineteenth and early twentieth centuries electric street car companies provided transportation throughout the city. *See Lakeview Land Co. v. San Antonio Traction Co.*, 95 Tex. 252, 66 S.W. 766, 767 (1902); *Boldt v. San Antonio Traction Co.*, 148 S.W. 831 (Tex.Civ.App.— San Antonio 1912, no writ). Until 1959, bus service throughout the city was also provided by a private, for-profit company, originally operating as San Antonio Transit Company. *See Bonney v. San Antonio Transit Co.*, 160 Tex. 11, 325 S.W.2d 117, 118 (1959); *Perez v. San Antonio Transit Co.*, 342 S.W.2d 802,

803 (Tex.Civ.App.—Eastland 1961, writ ref'd).

In 1959, the City of San Antonio purchased the city's private bus company and renamed it the San Antonio Transit System ("SATS"). During this time, its operation of the bus company would be classified as a proprietary function as opposed to a governmental function, and in such capacity the city was liable for its torts. *Cf. Dias v. City of San Antonio*, 488 S.W.2d 522, 523 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.); *accord Green v. City of Amarillo*, 244 S.W. 241, 242 (Tex. Civ.App.—Amarillo 1922), *aff 'd on other grounds*, 267 S.W. 702 (Tex. Comm'n App. 1924, op. adopted).

In 1973, the Legislature enacted article 1118x to permit the state's urban areas to develop rapid transit systems. *See* TEX. REV. CIV. STAT. ANN. art. 1118x, *repealed and now codified in* TEX. TRANSP. CODE § 451.001 *et seq.* (Vernon Supp.1998); *City of Humble v. Metropolitan Transit Authority*, 636 S.W.2d 484, 486 (Tex.App.—Austin 1982, writ ref'd n.r.e.). The Legislature's findings incorporated into the original act expressed concern that traffic congestion in urban areas created air pollution, dangers to property and public health, and placed an undue economic burden on street maintenance and traffic flow. Section six describes a confirmed mass transit authority as "a public body corporate and politic, exercising public and essential governmental functions." *See* Act of May 21, 1973, 63rd Leg., R.S., 1973 Tex. Gen. Laws, ch. 141, § 1 at 302 & § 6 at 306 (amended at subsequent leg. sessions) (current version at TEX. TRANSP. CODE § 451.001 *et seq.* (Vernon Supp.1998)).

In accordance with this legislation, the City of San Antonio passed an ordinance creating VIA on February 3, 1977, and the citizens of San Antonio confirmed this act by election on November 8, 1977. VIA purchased the facilities and equipment of San Antonio Transit System from the City of San Antonio and commenced operations on March 1, 1978.

Appellant views this series of events as having unconstitutionally transformed the

---

1. The following background was gleaned from appellant's brief.

city's bus company from one exercising proprietary functions and subject to unlimited tort liability to one exercising governmental functions and subject to limited liability. In five points of error, combined for purposes of argument, appellant summarizes the issue:

Is the reclassification of municipal transportation from a proprietary function to a governmental function pursuant to TEX. TRANSP. CODE § 451.052 a violation of the open courts provision and the right to equal protection under the Texas Constitution, as an unreasonable and arbitrary restriction upon an injured plaintiff's ability to recover damages available to that plaintiff at common law?

## STANDARD OF REVIEW

As the summary judgment turned on a legal issue, the standard of review in this appeal is one which applies to constitutional challenges against a state statute. We begin our review with a strong presumption that the statute is constitutional. *See Texas Nat'l Guard Armory Bd. v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939) (citing to *Middleton v. Texas Power & Light Co.*, 249 U.S. 152, 39 S.Ct. 227, 63 L.Ed. 527 (1919)). Moreover, in construing a statute, we presume that: (1) compliance with the constitutions of this State and the United States is intended; (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended; (4) a result feasible of execution is intended; and (5) public interest is favored over any private interest. TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988). An intermediate appellate court must have clear and certain grounds to find a statute unconstitutional. *See Scurlock Permian Corp. v. Brazos County*, 869 S.W.2d 478, 484 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Thus, we are obliged to construe a statute in a manner that sustains constitutionality if at all possible. *See Key Western Life Ins. Co. v. State Bd. of Ins.*, 163 Tex. 11, 350 S.W.2d 839, 849 (1961). The burden is on the party who raises the constitutional challenge. *See Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex. 1985).

## TEXAS TORT CLAIMS ACT

Governmental entities enjoy sovereign immunity to the extent it has not been waived. *See* Joe R. Greenhill & Thomas V. Murto, III, *Governmental Immunity*, 49 TEX. L. REV. 462, 462 (1971). The state has the legal authority to limit the terms of consent to be sued and limit the total dollar amount to which it is willing to subject itself to liability on a claim. *See Trinity River Auth. v. Williams*, 689 S.W.2d 883, 886 (Tex. 1985). In 1969, the Legislature enacted the Tort Claims Act as a mechanism to provide limited redress for claims against the State. *See* TEX. CIV. PRAC. & REM.CODE § 101.025; *Governmental Immunity*, 49 TEX. L.REV. at 467. Our supreme court recently explained that:

The Act's waiver of immunity is limited in at least two ways: by the types of claims that can be brought against a governmental unit, TEX. CIV. PRAC. & REM.CODE § 101.021, and by a cap on damages. *Id.* at § 101.023. Section 101.023 does not circumscribe a plaintiff's total recovery for a given injury. Instead, it delineates the extent of the government's waiver of immunity from liability for that injury. *See University of Texas at El Paso v. Nava*, 701 S.W.2d 71, 72 (Tex.App.—El Paso 1985, no writ). When a plaintiff suffers an injury that falls within the Tort Claims Act, the Legislature has agreed to hold the government liable up to a specified dollar amount.

*Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 80 (Tex.1997). This Act has withstood numerous constitutional challenges. *See, e.g., University of Tex. Med. Branch v. York*, 808 S.W.2d 106, 111 (Tex.App.—Houston [1st Dist.] 1991) (state and its agencies perform governmental functions and may be sued only pursuant to the Act), *rev'd on other grounds*, 871 S.W.2d 175 (Tex.1994); *Tarrant County Water Control v. Crossland*, 781 S.W.2d 427, 439 (Tex.App.—Fort Worth 1989, no writ); *Stout v. Grand Prairie Indep. School Dist.*, 733 S.W.2d 290, 296–98 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

The Texas Transportation Code defines what a rapid transit authority is and is not. It is a public political entity and corporate

body of perpetual succession which exercises public and essential governmental functions. Its operation is not proprietary for any purpose. *See* Tex. Transp. Code Ann. § 451.052 (Vernon Supp.1998). Its exposure to tort liability is confined to the provisions of the Tort Claims Act. *See id.* at § 451.052(c); Tex. Civ. Prac. & Rem.Code Ann. § 101.023 (Vernon Supp.1998). In 1987, the Legislature amended the Tort Claims Act to reclassify some previously proprietary functions, including transportation systems, as governmental functions, thereby placing such entities under the shield of immunity's cap on damages.

## The Authority to Create VIA

■ Appellant argues that the cap on damages when applied to mass transit authority liability is constitutionally infirm because Article 1118x was not supported by an enabling constitutional amendment. VIA replies that the Legislature may use its general police powers to create new entities. We agree. The impetus to create mass transit authorities was "to help the state's urban areas remedy their ever-expanding problems such as traffic congestion and air pollution which resulted in part from the lack of mass transit systems in those areas." *City of Humble,* 636 S.W.2d at 486. Indeed, this same constitutional argument was rejected more than sixteen years ago by our sister court in Austin:

> [T]he state constitution is not a grant of power, but a limitation upon the power of the state to act. Therefore, absent an express or directly implied prohibition in that document, it follows the legislature is free to enact laws which it deems are in the best interest of the people of the State.

*Id.* at 493, citing to *Shepherd v. San Jacinto Junior College Dist.,* 363 S.W.2d 742, 743 (Tex.1962). *See also Davis v. City of Lubbock,* 160 Tex. 38, 326 S.W.2d 699, 710 (1959) (rejecting challenge to legislature's creation of urban renewal agency without constitutional enabler).

## The Open Courts Doctrine

■ Next, appellant argues that the damage cap of the Tort Claims Act violates the Texas Constitution guarantee that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have a remedy by due course of law." *See* Tex. Const. art. I, § 13. This provision provides at least three separate constitutional guarantees: (1) courts must actually be open and operating; (2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and (3) the Legislature may not abrogate well-established common law causes of action unless the reason for its action outweighs the litigants' constitutional right to redress. *See Central Appraisal Dist. of Rockwall v. Lall,* 924 S.W.2d 686, 689 (Tex. 1996); *Texas Ass'n of Business v. Texas Air Control Bd.,* 852 S.W.2d 440, 448 (Tex.1993). We are concerned with the third of these guarantees in this appeal. To establish a claim under this doctrine, appellant must show that he has a cognizable common-law cause of action, and that restriction of the claim is unreasonable or arbitrary when balanced against the statute's purpose. *See Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 355 (Tex.1990).

■ Appellant argues that because VIA's predecessors—the privately and publicly-owned bus companies which formerly operated in the city—were liable to suit for unlimited damages, the 1973 reclassification of mass transit operations as a governmental function, with its limited waiver of immunity under the Tort Claims Act damages cap, constitutes an open courts violation. The cap on damages represents a limitation on appellant's claim to $100,000 regardless of the extent of the injury.

There is no question that appellant's son could establish a cognizable common-law cause of action if suit were brought against a private bus company. *Cf. Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex.1983). VIA, however, is a public entity created in accordance with a statute which provides limited waiver of liability pursuant to the Tort Claims Act.

We thus consider whether this statutory restriction on appellant's recovery is unreasonable or arbitrary when balanced against the statute's purpose. Appellant argues that the damages claimed far exceed the cap and

there is no express or implied purpose behind the transportation code which justifies the cap. VIA argues that this restriction is reasonable when balanced against the purpose of former article 1118x to ease the problems associated with urban growth, such as air pollution and traffic congestion.

 We are obliged to look to the legislature "as the authorized spokesman of state policy in the matter of what is or is not governmental for tort immunity purposes." *City of Corsicana v. Wren*, 159 Tex. 202, 317 S.W.2d 516, 520 (1958). We do not find anything arbitrary about the limitations on waiver of immunity in connection with the creation of mass transit authorities.[2] In the *Wren* case, which involved the classification of municipal airports as governmental in function, the court stated:

> No doubt airports, like railroad terminals and ship wharves, could be, and in some instances are, run by private enterprise, even as, only a short time back, education was a strictly private affair and, further back, tax collection and military operations were sometimes farmed out by governments to private persons. But this does not mean that airport operation, when conducted by a city or other governmental entity, cannot be honestly classed as governmental, especially when we know that in our own state most or all important airports are municipally owned and operated.

*Id.* 317 S.W.2d at 521. The fact that bus transportation in San Antonio was at one time provided by private bus companies does not abrogate the Legislature's authority under its general police powers to later reclassify the function of a regional transit authority as exclusively governmental. *Id.; City of San Antonio v. Winkenhower*, 875 S.W.2d 388, 392 (Tex.Civ.App.—San Antonio 1994, writ denied); *accord* Texas Atty. Gen. Op. No. MW–10 (1979).

**THE EQUAL PROTECTION ARGUMENT**

 Appellant further argues that a limitation on damages presents an equal protection violation because damages which exceed the $100,000 cap are not accorded the same opportunity for redress as those claims which can be fully compensated under the cap. This challenge has been rejected previously as to the Tort Claims Act and as to former article 1118x. *See Texas Dep't of Mental Health and Mental Retardation v. Petty*, 817 S.W.2d 707, 721 (Tex.App.—Austin 1991) (state has legitimate interest in limiting damage claims paid from public funds), *aff'd*, 848 S.W.2d 680 (Tex.1992); *cf. City of Humble*, 636 S.W.2d at 491(where all citizens are deprived of right asserted, there is no equal protection violation). In this case, all citizens who sustain an injury are limited to the same damages cap regardless of the extent of their injury.

For these reasons, we overrule appellant's points of error and affirm the judgment of the trial court.

---

**2.** In 1970, the $100,000 limitation on damages brought considerably more redress than it does in 1998. While we do not find that cap arbitrary and unreasonable in the context of the time it was created, we do think it is time the Legislature reviewed the reasonableness and adequacy of this cap in light of the changes in costs and valuations that have occurred since 1970. Ultimately, however, we feel that this analysis and decision is clearly within the Legislature's realm, not ours. *See Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex.1987).