OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



December 3, 2001

The Honorable David M. Motley
Kerr County Attorney
Kerr County Courthouse, Suite BA-103
700 Main Street
Kerrville, Texas 78028

Opinion No. JC-0439

Re: Whether statutes cited in various contracts under which Kerr County has transferred funds to certain nonprofit entities authorize the County to make the transfers (RQ-0398-JC)

Dear Mr. Motley:

You question Kerr County's authority to transfer county funds to various nonprofit organizations, each of which "serve[s] children's needs."[1] You state that Kerr County (the "County") "has been annually funding several non-profit entities" in accordance with contracts that specify the amount of funds, the nonprofit entity's obligations to the County, "the performance standards[,] and the right to inspect financial records to ensure compliance with the contract."[2] A county may exercise those powers explicitly or implicitly conferred upon it by statute. *See* Tex. Att'y Gen. Op. No. JC-0171 (2000) at 1. Article III, section 52 of the Constitution bars a transfer of county funds to a private entity unless the transfer serves a public purpose of the county and the transfer is subject to adequate controls, contractual or otherwise, to ensure that the public purpose is accomplished. *See* TEX. CONST. art. III, § 52; Tex. Att'y Gen. Op. No. JC-0335 (2001) at 6. You doubt that these expenditures serve any "public purpose tied to [a county's] express or implied powers," with the possible exception of the County's authority under section 81.027 of the Local Government Code to "provide for the support of paupers, residents of [the] county, who are unable to support themselves." Request Letter, *supra* note 1, at 4; *see* TEX. LOC. GOV'T CODE ANN. § 81.027 (Vernon Supp. 2001).

We conclude that, with respect to the nonprofit organizations and contracts to which you refer, the statutes cited in the contracts generally appear to provide the County with sufficient authority to make the expenditures of public funds, with a few exceptions. We assume that the Kerr County Commissioners Court has determined, with respect to each of the expenditures you mention, that the expenditure serves a public purpose and that adequate controls are in place to ensure that the public purpose will be accomplished. Whether a particular expenditure of public funds serves a public purpose is typically an issue for the commissioners court to resolve in the first instance. *See*

---

[1]*See* Letter from Honorable David M. Motley, Kerr County Attorney, to Honorable John Cornyn, Texas Attorney General at 2 (June 22, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

[2]*Id.*

Tex. Att'y Gen. Op. Nos. JC-0239 (2000) at 4 (stating that public officeholder must determine in first instance whether particular office closure serves public purpose); DM-317 (1995) at 4 (concluding that whether county commissioners court may expend county funds to pay travel expenses of applicant for pathologist position is determination for commissioners court in first instance); Tex. Att'y Gen. LO-96-028, at 3 n.2 (suggesting that commissioners court may determine in first instance whether travel allowance and in-kind reimbursement for county commissioner serves public purpose).

A county commissioners court may exercise only those powers that the state constitution and statutes confer upon it, either explicitly or implicitly. *See* Tex. Att'y Gen. Op. No. JC-0171 (2000) at 1. Moreover, a county commissioners court exercises powers and jurisdiction only over "county business" as conferred by law. TEX. CONST. art. V, § 18(b). A commissioners court thus does not have power to accomplish something that is not county business. *See id.*; Tex. Att'y Gen. Op. No. JC-0036 (1999) at 6. The phrase "county business" has been broadly construed "to encompass matters of general concern to county residents." Tex. Att'y Gen. Op. No. JC-0036 (1999) at 6.

Article III, section 52 and article XI, section 3 of the Texas Constitution proscribe gratuitous transfers of public funds to private entities. *See* TEX. CONST. art. III, § 52; *id.* art. XI, § 3. A county is not prohibited from contracting with a private nonprofit corporation to provide services that the county is authorized to provide so long as the county receives adequate consideration. *See* Tex. Att'y Gen. Op. No. JC-0335 (2001) at 7. The constitution limits a county's authority to grant public funds to a private nonprofit corporation to only those situations where the grant serves a public purpose that the county is authorized to accomplish and is subject to adequate controls, "contractual or otherwise, to ensure that the public purpose is accomplished." *Id.*; *see* TEX. CONST. art. III, § 52; *id.* art. XI, § 3; *see also id.* art. VIII, § 3 (directing that taxes be collected "for public purposes only"). A transfer for a public purpose is constitutionally permissible even if a private interest benefits incidentally. *See Barrington v. Cokinos*, 338 S.W.2d 133, 139 (Tex. 1960). A contract that imposes on the nonprofit organization an obligation to perform a function that benefits the public may provide adequate control. *See Key v. Comm'rs Court of Marion County*, 727 S.W.2d 667, 669 (Tex. App.–Texarkana 1987, no writ) (per curiam).

You are particularly concerned about the County's authority to transfer county funds to six organizations: Court Appointed Special Advocates (CASA); Hill Country Crisis Council; Kids' Advocacy Place; K'Star; Big Brothers and Sisters; and Families & Literacy, Inc. Request Letter, *supra* note 1, at 3-4. We have received and examined copies of the County's contracts with each of these entities, although we do not construe them because of the fact issues involved. *See* Tex. Att'y Gen. Op. Nos. JC-0395 (2001) at 2; JC-0032 (1999) at 4; DM-383 (1996) at 2; DM-192 (1992) at 10. We will summarize what we perceive to be the pertinent features of each of the contracts at issue.

1.  The County cites, in its contract with CASA, its authority under section 264.006 of the Family Code. *See* CASA Contract at 1 (on file with Opinion Committee); *see infra* p. 5 (discussing section 264.006, Family Code). Under the contract, CASA, in consideration of $3,000 from the County, is bound

to provide "guardians ad litem for use in" appropriate court cases relating to children, in accordance with a court order; and provides "family studies and . . . such other information gathering services" as the county courts request. CASA Contract at 2.

2.     The County cites as authority for its contract with Hill Country Crisis Council section 81.007 of the Family Code and section 51.011 of the Human Resources Code. *See* Hill Country Crisis Council Contract at 1 (on file with Opinion Committee); *see infra* p. 7 (discussing section 81.007, Family Code and section 51.011, Human Resources Code). The Hill Country Crisis Council, in consideration of $5,000 from the County, provides "[i]ntake and referral services for qualified persons seeking family violence protective orders from the [county] attorney's office; and . . . maintain[s] a 'batterer's intervention and treatment program' designed to counsel and treat those who commit acts of family violence." Hill Country Crisis Council Contract at 1-2.

3.     The County cites as authority for its contract with Kids' Advocacy Place sections 264.402 and 264.403 of the Family Code. *See* Kids' Advocacy Place, Inc. Contract at 1 (on file with Opinion Committee); *see infra* pp. 5, 6 (discussing sections 264.402 and .403, Family Code). Kids' Advocacy Place, in consideration of $3,000 from the County, provides a facility where "children who are the victims of sexual and/or physical abuse and their non-offending family members can go for evaluation, intervention, and counseling"; provides a forum for agencies and County professionals who work with abused children to "gather and work together in assisting victims and their families"; provides "a resource center for training and education in the area of child abuse and victimization"; provides a "warm, non-threatening environment in which the victims of child abuse and victimization and their families can work with law enforcement or protection services" to prepare for court appearances; and provides a location where local law enforcement agencies and others "may obtain evidence to be used to investigate and prosecute those accused of child abuse and neglect." Kids' Advocacy Place Contract at 1-2.

4.     The County cites as authority for its contract with K'Star section 264.006 of the Family Code. *See* K'Star Contract at 1 (on file with Opinion Committee); *see infra* p. 5 (discussing section 264.006, Family Code). K'Star, in consideration of $5,000 from the County, provides short-term emergency shelter for youth "in need" or "at risk"; food, clothing, counseling, and education to youth "in need" or "at risk"; and facilities for residential placement of youth in need of protection or other assistance. K'Star Contract at 1.

5.      The County cites as authority for its contract with Big Brothers and Sisters section 264.006 of the Family Code. *See* Big Brothers and Sisters Contract at 1 (on file with Opinion Committee); *see infra* p. 5 (discussing section 264.006, Family Code).   Big Brothers and Sisters, in consideration for $3,000, provides to county residents "positive adult role models to children . . . from single-parent families" and "additional support to single-parent families by giving supplemental community resource referrals." Big Brothers and Sisters Contract at 1.

6.      The County cites as authority for its contract with Families & Literacy, Inc. section 264.006 of the Family Code; county courts' "authority under various provisions of the Texas Family Code to order family studies, order parent education, and pursue other matters designed to aid the courts in the exercise of their duties regarding the welfare of children"; and article 42.12, section 11(c) of the Code of Criminal Procedure. *See* Families & Literacy, Inc. Contract at 1 (on file with Opinion Committee); *see infra* pp. 6, 7 (discussing section 264.006, Family Code; section 107.051, Family Code; and article 42.12, Code of Criminal Procedure). Families & Literacy, Inc. provides, in consideration of $2,000 from the County, "parent/family education for use by the [county] courts in appropriate cases relating to . . . juvenile delinquency"; family study courses to "improve individual interpersonal relationships of various family members involved in the" county courts; and information to county court judges necessary to assess a defendant's educational skill level and to evaluate and place appropriate conditions upon a defendant's supervision. Families & Literacy, Inc. Contract at 2.

Your letter to this office lists none of the statutes that the contracts themselves cite. Without referencing these statutes, you suggest that the County has no express or implied authority to make the transfers, unless the authority fits under the County's authority to provide for indigent residents under section 81.027 of the Local Government Code. *See generally* Request Letter, *supra* note 1; *cf. also* Act of May 8, 2001, 77th Leg., R.S., ch. 254, § 1, 2001 Tex. Sess. Law Serv. 463 (to be codified as TEX. LOC. GOV'T CODE ANN. § 381.004(b)(6), (f)) (purporting to authorize county to contribute county funds to comprehensive literacy program or children's advocacy center "[t]o stimulate business and commercial activity in a county"). Section 81.027 simply authorizes a county commissioners court "to provide for the support of paupers, residents of their county, who are unable to support themselves." TEX. LOC. GOV'T CODE ANN. § 81.027 (Vernon Supp. 2001). You aver that, using its authority under section 81.027, a county might fund these six organizations in "two possible scenarios": "Certain children could be classified as paupers under the right factual scenario. A pauper child might be one who has parents who are unable to provide necessary resources for him or one who does not have parents at all." Request Letter, *supra* note 1, at 4. While we agree that the County's authority to provide for paupers may encompass the authority to provide funds to these

organizations in certain circumstances, we believe that the County has other, more direct statutory authority, such as that cited in the contracts.

Section 264.006 of the Family Code, which is cited as authority for four of the contracts, expressly empowers a county to "provide for services to and support of children in need of protection and care without regard to the immigration status of the child or the child's family." TEX. FAM. CODE ANN. § 264.006 (Vernon Supp. 2001); *see* Hill Country Court-Appointed Special Advocates ("CASA") Contract, K'Star Contract, Big Brothers and Sisters Contract, Families & Literacy, Inc. Contract (all on file with Opinion Committee). Unlike section 81.027 of the Local Government Code, which pertains only to indigent county residents, section 264.006 of the Family Code does not tie providing services and support of children to those who are indigent but to those "in need of protection and care." *See* TEX. FAM. CODE ANN. § 264.006 (Vernon Supp. 2001); *see* TEX. LOC. GOV'T CODE ANN. § 81.027 (Vernon Supp. 2001); Request Letter, *supra* note 1, at 4. You do not contend that section 264.006 is unconstitutional, and, indeed, we must presume, without "clear and certain" evidence to the contrary, that it is constitutional and that providing services to children in need of protection and care is "county business." *Salvatierra v. VIA Metro. Transit Auth.*, 974 S.W.2d 179, 182 (Tex. App.–San Antonio 1998, pet. denied); *see Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *McKinney v. Blankenship*, 282 S.W.2d 691, 697 (Tex. 1955); *Rooms With a View, Inc. v. Private Nat'l Mortgage Ass'n*, 7 S.W.3d 840, 845 (Tex. App.–Austin 1999, pet. denied), *cert. denied sub nom. Nat'l Ass'n of Remodeling Indus. v. Rooms With a View, Inc.*, 531 U.S. 826 (2000); *see also* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 1998) (stating that legislature is presumed to have intended to comply with state and federal constitutions).

We conclude that section 264.006 authorizes the County to transfer funds to CASA, K'Star, Big Brothers and Sisters, and Families & Literacy, Inc. to the extent these nonprofit organizations provide services to and support children who need protection and care, as section 264.006 contemplates. We assume that the County has determined that each of these contractual transfers of public funds serves the public purpose authorized by section 264.006 and that each transaction is adequately controlled by the County to ensure that the public purpose is accomplished. Whether in any particular case the County has adequate controls in place, which may include receiving adequate consideration from the nonprofit entity, is a question for the county commissioners court to determine in the first instance. *See* Tex. Att'y Gen. Op. No. JM-1039 (1989) at 7 (concluding that county commissioners court may determine adequacy of consideration in contract with water district).

The County's contract with Kids' Advocacy Place, Inc. relies upon the County's authority under sections 264.402 and 264.403 of the Family Code. Under these sections, a county may execute with representatives of the Texas Department of Protective and Regulatory Services, with county and municipal law enforcement agencies that investigate child abuse, with the county or district attorney's office which routinely prosecutes child-abuse cases, and with any other interested governmental entity a memorandum of understanding to establish and participate in a children's advocacy center. *See* TEX. FAM. CODE ANN. §§ 264.402, .403 (Vernon 1996). A center's duties relate

to intervening in cases of suspected child abuse and to coordinating the various governmental entities that may be involved in investigating or prosecuting a child-abuse case:

> A center shall:
>
>> (1) assess victims of child abuse and their families to determine their need for services relating to the investigation of child abuse;
>>
>> (2) provide services determined to be needed under Subdivision (1);
>>
>> (3) provide a facility at which a multidisciplinary team appointed under Section 264.406 can meet to facilitate the efficient and appropriate disposition of child abuse cases through the civil and criminal justice systems; and
>>
>> (4) coordinate the activities of governmental entities relating to child abuse investigations and delivery of services to child abuse victims and their families.

*Id.* § 264.405. In the memorandum of understanding, all participating entities agree to cooperate in, among other things, "developing a . . . team approach to investigating child abuse" and "reducing, to the greatest extent possible, the number of interviews required of a victim of child abuse." *Id.* § 264.403(b). You do not contend that sections 264.402 and 264.403 are unconstitutional, and we consequently presume that they are consistent with the constitution.

We conclude that sections 264.402 and 264.403 authorize the County to transfer county funds to Kids' Advocacy Place, Inc. to accomplish the statutory purposes. We assume that the County has executed the requisite memorandum of understanding, that the County has determined that the expenditure to Kids' Advocacy Place, Inc. serves the public purpose authorized by sections 264.402 and 264.403, and that the County has determined that it has in place sufficient controls to ensure that the public purpose will be accomplished.

We have already determined that, to the extent the County's transfer of funds to Families & Literacy, Inc. provides for "services to and support of children in need of protection and care," section 264.006 of the Family Code authorizes the County to make the transfer. The County's contract with Families & Literacy, Inc. cites authority in addition to section 264.006, however. *See* Families & Literacy, Inc. Contract at 1. First, the contract cites county courts' authority "under various provisions of the Texas Family Code to order family studies, order parent education, and pursue other matters designed to aid the courts in the exercise of their duties regarding the welfare of children." *See id.* While the contract does not list particular sections of the Family Code, we note, as an example, that section 107.051 of the Family Code permits a court with jurisdiction in a suit affecting the parent-child relationship to order "a social study into the circumstances and

condition of the child and of the home of any person requesting managing conservatorship or possession of the child." TEX. FAM. CODE ANN. § 107.051(a) (Vernon Supp. 2001). Second, the contract cites county courts' authority under article 42.12, section 11(c) of the Code of Criminal Procedure, which directs a county court judge who places a capable defendant on community supervision to require the defendant to attain a specified level of educational skill. Families & Literacy, Inc. Contract at 1; *see* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 11(c) (Vernon Supp. 2001).

The County's contract with the Hill Country Crisis Council cites, as authority for the county's contracting power, section 81.007 of the Family Code, which makes the county or district attorney's office responsible to file for County residents applications for protective orders in situations involving family violence, as well as section 51.011 of the Human Resources Code, which authorizes the Department of Human Services to finance family-violence shelters with public grants. *See* TEX. FAM. CODE ANN. § 81.007(a) (Vernon Supp. 2001); TEX. HUM. RES. CODE ANN. § 51.011(a) (Vernon 2001); Hill Country Crisis Council Contract; *see also* Act of Mar. 29, 2001, 77th Leg., R.S., ch. 6, § 5, 2001 Tex. Sess. Law Serv. 8, 9 (to be codified as an amendment to TEX. HUM. RES. CODE ANN. § 51.003) (authorizing Department of Human Services to contract for services with family violence centers).

To the extent the contracts with Families & Literacy, Inc. and Hill Country Crisis Council rely on statutes other than section 264.006 of the Family Code, the statutes cited do not provide express authority for the County's transfer of funds. Nor, in our opinion, do these statutes implicitly authorize a county to grant public funds for the purposes set forth in the contracts. Nevertheless, as we have already determined, section 264.006 of the Family Code appears to authorize a transfer of funds to Families & Literacy, Inc., at least to the extent that the organization provides services to and supports children who need protection and care. *See* TEX. FAM. CODE ANN. § 264.006 (Vernon Supp. 2001); *supra* at p. 5. Additionally, we believe that section 264.006 authorizes the County to transfer funds to Hill Country Crisis Council to the extent Hill Country Crisis Council provides services to and supports children who need protection and care. *See* TEX. FAM. CODE ANN. § 264.006 (Vernon Supp. 2001).

# S U M M A R Y

Under article III, section 52 of the Texas Constitution, a county may not grant public funds to a private nonprofit organization unless the county commissioners court determines that the grant serves a public purpose that the county is authorized to accomplish and the county adequately controls the transfer to ensure that the public purpose is accomplished. *See* TEX. CONST. art. III, § 52; *see also id.* art. XI, § 3. Section 264.006 of the Family Code, which authorizes a county to provide services and support to children who need protection and care, empowers a county to transfer funds to a nonprofit organization that provides services and support to such children. Likewise, sections 264.402 and 264.403 of the Family Code authorize a county to participate in and provide funds to a child-advocacy center in accordance with a memorandum of understanding. A county may grant funds to a nonprofit entity to accomplish a statutorily authorized purpose, provided that the county determines the transaction will achieve a public purpose and that adequate controls are placed on the expenditure to ensure that the public purpose is accomplished.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee