OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



September 4, 2002

The Honorable Tom Ramsay
Chair, County Affairs Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0549

Re: Whether article 1.051 of the Texas Code of Criminal Procedure requiring that counsel for indigent criminal defendants be appointed within one day of the defendant's request in populous counties and within three days of the request in less populous counties violates state and federal equal protection guarantees, and related question (RQ-0519-JC)

Dear Representative Ramsay:

Article 1.051 of the Code of Criminal Procedure, as amended in 2001 by the Texas Fair Defense Act, establishes standards for appointing counsel to represent indigent persons in criminal proceedings. You ask whether article 1.051(c) requiring that counsel for indigent criminal defendants be appointed within one day of the defendant's request for counsel in populous counties and within three days of the request in less populous counties violates the equal protection guarantees of the state and federal constitutions.[1] You also ask whether article 1.051, in allowing each county to determine its own indigency standard for the purposes of appointing counsel, violates the equal protection guarantees. *See* Request Letter, *supra* note 1, at 1. We answer both questions in the negative.

Article 1.051 of the Texas Code of Criminal Procedure deals with a criminal defendant's right to representation by counsel. Subsection (a) provides that any "defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding." TEX. CODE CRIM. PROC. ANN. art. 1.051(a) (Vernon Supp. 2002). The statutory "right to be represented by counsel includes the right to consult in private with counsel sufficiently in advance of a proceeding to allow adequate preparation for the proceeding." *Id.* An indigent criminal defendant is entitled to have an attorney appointed in any adversarial judicial proceeding "that may result in punishment by confinement and in any other criminal proceeding if the court concludes that the interests of justice require representation." *Id.* art. 1.051(c); *see also id.* art. 26.04(c) (authorizing court or its designee

---

[1]*See* Letter from Honorable Tom Ramsay, Chair, County Affairs Committee, Texas House of Representatives, to Honorable John Cornyn, Texas Attorney General (Mar. 4, 2002) (on file with Opinion Committee) [hereinafter Request Letter].

to appoint counsel if court determines that defendant charged with felony or misdemeanor punishable by confinement is indigent or interests of justice require representation). "Indigent," for the purposes of article 1.051, "means a person who is not financially able to employ counsel." *Id.* art. 1.051(b). Counsel appointed to represent an indigent defendant is entitled to ten days to prepare for a proceeding unless the preparation time is waived with the consent of the defendant. *See id.* art. 1.051(e). The ten-day period is counted from the date of appointment. *See* 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 24.62 (2d ed. 2001) (statute has been applied by requiring counsel to have ten days from appointment).

Article 1.051 now provides a maximum time limit within which counsel must be appointed to represent an indigent defendant. Prior to 2001, article 1.051 required only that counsel be appointed "as soon as possible" if requested by an indigent defendant, but did not specify an outside time limit for the appointment. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 979, § 1, 1987 Tex. Gen. Laws 3321, 3321-22. In 2001, the legislature adopted Senate Bill 7, the Texas Fair Defense Act, to generally provide more uniform standards for the appointment and compensation of counsel to represent indigent persons. *See* Texas Fair Defense Act, 77th Leg., R.S., ch. 906, § 1, 2001 Tex. Gen. Laws 1800.[2] Senate Bill 7 amended, among other statutory provisions, article 1.051 to require a court or the court's designee to appoint counsel for an indigent defendant within specific time periods of the defendant's request. *See id.* § 2, at 1800-01; TEX. CODE CRIM. PROC. ANN. art. 1.051(c), (i) (Vernon Supp. 2002). The time periods differ depending on the initiation of adverse judicial proceedings and the population of the county in which the court is located. Under article 1.051(c), if adverse judicial proceedings have been initiated, counsel must be appointed "as soon as possible, *but not later than the end of the third working day* after the date on which the court or court's designee receives the defendant's request for appointment of counsel." TEX. CODE CRIM. PROC. ANN. art. 1.051(c) (Vernon Supp. 2002) (emphasis added). But in counties with a population of 250,000 or more, counsel must be appointed "as soon as possible, *but not later than the end of the first working day* after the date on which the court or the court's designee receives the defendant's request for appointment of counsel." *Id.* (emphasis added). If adverse judicial proceedings have not been initiated, article 1.051(i) provides that counsel must be appointed "immediately following the expiration of *three working days* after" the receipt of the defendant's request; in counties with a population of 250,000 or more, counsel must be appointed "immediately following the expiration of *one working day* after" the receipt of the defendant's request. *Id.* art. 1.051(i) (emphasis added).

Your questions are prompted by the 2001 amendments to article 1.051(c) effected by Senate Bill 7. You note that "Senate Bill 7 provides for a system whereby in counties of less than 250,000 . . . an attorney shall be appointed for any eligible defendant within 3 days of the request" but "[i]n counties of 250,000 or more, the Courts shall appoint counsel within 1 day of the request." Request

---

[2]*See also* SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. S.B. 7, 77th Leg., R.S. (2001) ("Throughout the many criminal courts . . . the variety of indigent defense systems result in a lack of uniformity in standards and quality of representation among those many indigent defense systems. Senate Bill 7 provides for added order, accountability, and quality control of the state's provisions relating to indigent defense.").

Letter, *supra* note 1, at 1. You ask: "From a constitutional equal protection standpoint, are citizens of counties with a population of less than 250,000 going to be denied equal protection under the law?" *Id.* You do not elaborate on your question. Because you do not suggest that the statute is inherently unfair, we understand you to ask whether article 1.051(c) in treating residents in counties with a population of fewer than 250,000 differently than residents in counties with a population of 250,000 or more on its face violates the equal protection guarantees of the state and federal constitutions. *See North v. Moffitt*, 417 U.S. 600, 609 (1974) ("'Due process' emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation are treated. 'Equal protection,' on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable."). We conclude that it does not.

"An analysis of the constitutionality of a [state] statute begins with a presumption of validity." *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996); *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex. 1994); *Spring Branch I.S.D., v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985). When possible, a court will interpret a statute in a manner that sustains its constitutionality. *See Barshop*, 925 S.W.2d at 629; *Tex. State Bd. of Barber Exam'rs v. Beaumont Barber Coll., Inc.*, 454 S.W.2d 729, 732 (Tex. 1970). The burden of proof "is on the party attacking the constitutionality of an act of the legislature." *Stamos*, 695 S.W.2d at 558; *Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex. 1985); *see also Salvatierra v. Via Metro. Transit Auth.*, 974 S.W.2d 179, 182 (Tex. App.–San Antonio 1998, pet. denied) ("An intermediate appellate court must have clear and certain grounds to find a statute unconstitutional.").

The fact that persons are treated differently, without more, is insufficient to establish denial of equal protection. *See Griffin v. County Sch. Bd. of Prince Edward Co.*, 377 U.S. 218, 230 (1964). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," U.S. CONST. amend. XIV, § 1, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Similarly, article I, § 3 of the Texas Constitution directing that "[a]ll free men, when they form a social compact, have equal rights," guarantees equality of rights to all persons. TEX. CONST. art. I, § 3; *Burroughs v. Lyles*, 181 S.W.2d 570, 574 (Tex. 1944). Equal protection challenges under both the federal and state constitutional guarantees are reviewed under the same standard. *See City of Cleburne*, 473 U.S. at 440; *Richards v. League of United Latin Am. Citizens*, 868 S.W.2d 306, 310-11 (Tex. 1993). The general rule is that a statute is presumed to be valid and will be upheld if the classification of persons drawn by the statute is rationally related to a legitimate state interest. *See City of Cleburne*, 473 U.S. at 440; *Richards*, 868 S.W.2d at 310-11. But the general rule gives way when the classification impinges on a fundamental, constitutionally protected right or distinguishes between persons, in terms of any right, on a "suspect" basis such as race or national origin. *See City of Cleburne*, 473 U.S. at 440; *Richards*, 868 S.W.2d at 311. In those instances, the state action is subject to strict scrutiny and will be upheld only if the classification is narrowly

tailored to serve a compelling state interest. *See City of Cleburne*, 473 U.S. at 440; *Richards*, 868 S.W.2d at 311.

The classification in article 1.051 of the Code of Criminal Procedure is not subject to strict scrutiny because it does not distinguish between persons — in terms of the statutory right to have counsel appointed within three days or within one day of the request for counsel — on the basis of suspect factors, nor does it impinge on a fundamental right. On its face, the statutory classification here is not made on suspect basis. Neither criminal defendants nor indigents are inherently a "suspect class." *See Harris v. McRae*, 448 U.S. 297, 322-23 (1980) ("poverty, standing alone, is not a suspect classification"); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001), *cert. denied*, 533 U.S. 953 (neither prisoners nor indigents are a suspect class); *Williams v. Lynaugh*, 814 F.2d 205, 208 (5th Cir. 1987) (criminal defendants are not a suspect class). And you do not identify a constitutionally protected, fundamental right abridged or denied to indigent residents in less populous counties. We do not believe that the article 1.051 classification impinges on the right to counsel. The issue here is not whether counsel will be appointed, but rather when counsel will be appointed — within one day or three days of the request for counsel. Under the Sixth Amendment to the United State Constitution, indigent criminal defendants have the right to appointed counsel to represent the defendant after the commencement of adversarial judicial proceedings. *See, e.g., Green v. State*, 872 S.W.2d 717 (Tex. Crim. App. 1994) (en banc); *Johnson v. State*, 894 S.W.2d 529 (Tex. App.–Austin 1995, no pet).[3] Indigent criminal defendants, however, do not have a constitutionally protected right to have counsel appointed within a specified time period from the date of the request for counsel. *Cf. State v. Frye*, 897 S.W.2d 324, 327-28 (Tex. Crim. App. 1995) (en banc) (Court of Criminal Appeals like the United States Supreme Court has not declared a "bright line rule" for determining when adversarial proceedings have commenced in Texas, triggering Sixth Amendment right to counsel); 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 24.52 (2d ed. 2001) (Texas Court of Criminal Appeals has implicitly acknowledged that neither Sixth Amendment nor Texas law makes clear how promptly indigent defendant is entitled to have counsel appointed, citing *Frye*.). The Sixth Amendment guarantees defendants the right to *effective* assistance of counsel in state criminal trials. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). The appointment of counsel within one day, rather than three days would not appear to be, as a matter of law, necessary to ensure effective assistance of counsel under the Sixth Amendment. *Cf. Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to prove that counsel was constitutionally ineffective, defendant must show that counsel's performance was deficient and that deficient performance prejudiced the defense). In any case, under the Texas Code of Criminal Procedure, unless waived by the defendant, counsel is entitled to a ten-day preparation period from the date of his or her appointment. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(e) (Vernon Supp. 2002). Significantly, this statutory provision

---

[3]*See also Gideon v. Wainright*, 372 U.S. 335 (1963) (right of indigent defendant to counsel is fundamental and binding upon states by virtue of Sixth and Fourteenth Amendments); *Hernandez v. State*, 988 S.W.2d 770, 772-73 (Tex. Crim. App. 1999) (en banc) (article I, section 10 of the Texas Constitution providing that "[i]n all criminal prosecutions the accused . . . shall have the right of being heard by himself or counsel" is no more protective than its federal counterpart).

"reflects only a legislative requirement and is not based on constitutional necessity." 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 24.61 (2d ed. 2001); *see also Marin v. State*, 851 S.W.2d 275, 281 (Tex. Crim. App. 1993) (en banc) (describing statutory requirement as prophylactic rule of procedure designed by legislature "to impose a uniform requirement where the fairness of a flexible rule is too uncertain.").

The classification at issue is geographical and thus subject to the rational basis test. The "state and federal equality guarantees relate to 'equality between persons as such, rather than between areas, and . . . territorial uniformity is not a constitutional prerequisite.'" *Richards*, 868 S.W.2d at 311 (citing *McGowan v. Maryland*, 366 U.S. 420, 427 (1961), *Mouton v. State*, 627 S.W.2d 765, 767 (Tex. App.–Houston [1st Dist.] 1981, no pet.)). "Texas has long recognized that legislation limited in operation to only a portion of the state or prescribing different rules for distinct geographical areas is not invalid for denying equal protection where there is a reasonable basis for the distinction and all persons similarly situated in the same place are equally treated." *Mouton*, 627 S.W.2d at 767 (upholding constitutionality of Penal Code arson provision making certain conduct in incorporated cities and towns an offense, but not so providing in unincorporated areas); *see also, e.g., Ex Parte George*, 215 S.W.2d 170 (Tex. Crim. App. 1948) (upholding constitutionality of plumbing regulatory statute applicable only to organized cities in excess of 5,000 population and exempting others); *Click v. State*, 745 S.W.2d 480 (Tex. App.–Corpus Christi 1988, pet. ref'd) (upholding constitutionality of statute requiring use of video recording in DWI cases only in counties of population of 25,000 or more); *Daily v. Wheat*, 681 S.W.2d 747 (Tex. App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.) (upholding Probate Code provision providing for district court trials with twelve jurors in less populated counties while limiting right of probate litigants in larger counties to six-member juries); Tex. Att'y Gen. Op. No. JM-1036 (1989) (concluding that court would find constitutional Code of Criminal Procedure provision imposing criminal fine on justices of peace only in counties with population in excess of 225,000 for trying bad check cases arising outside precinct).

We believe a court would find a rational basis for the legislative distinction in article 1.051(c) of the Code of Criminal Procedure between counties with a population of 250,000 or more and those with a population of fewer than 250,000. The state has a legitimate interest in providing procedures for the fair operation of an indigent defense system, including a uniform procedure for the prompt appointment of counsel "where the fairness of a flexible rule is too uncertain." *See Marin*, 851 S.W.2d at 281 (describing statutory ten-day preparation requirement as prophylactic rule of procedure designed by legislature "to impose a uniform requirement where the fairness of a flexible rule is too uncertain" among precepts for the fair operation of adjudication system).[4] However, the need for uniformity must necessarily be balanced against the need for workability given the size of the state and the variations in size, resources, and problems of its numerous counties. *See Louisiana v. Bryant*, 324 So.2d 389, 392-93 (La. 1975) (methods for providing counsel for indigent defendants may vary from one part of state to another without violating equal protection where it is necessary to balance needs of uniformity and workability in state with political subdivisions of widely varying population, geography, and problems). The legislature could have reasonably decided that more

---

[4]*See also supra* note 2.

populous counties have more attorneys and other resources necessary to allow the appointment of counsel for an indigent criminal defendant in a shorter period of time than less populous counties with fewer resources. *See Hatch v. Oklahoma,* 58 F.3d 1447, 1455 (10th Cir. 1995) (state law allowing judges in populous counties to authorize employment of investigators for indigent criminal defense did not violate equal protection because state "legislature could have rationally concluded that hiring investigators only in its largest counties was a sounder and more efficient use of its resources."); *Bryant,* 324 So.2d at 392-93; *Arizona v. Smith,* 681 P.2d 1374, 1383 (Ariz. 1984) (although indigent defense system in Mohave County might violate due process and right to counsel, its variance from other county systems did not justify finding violation of equal protection, citing *Bryant*); *Eddings v. Oklahoma,* 616 P.2d 1159, 1164 (Ok. Crim. App. 1980) (statute providing investigative and psychiatric assistance to indigent defendants only in county with population in excess of 200,000 did not violate due process or equal protection; distinction was rational because larger counties undoubtedly have greater number of indigents). Accordingly, we conclude that it is unlikely a court would invalidate article 1.051(c) on equal protection grounds.

You also ask: "Is it a violation of the [E]qual [P]rotection [C]lause of the Texas [C]onstitution to allow each county to determine its own indigency standard under Senate Bill 7?" Request Letter, *supra* note 1, at 1. Your question is premised on the conclusion that there is no statutory definition of "indigency" for the purposes of appointing indigent counsel because Senate Bill 7 does not define that term. As you explain:

> Nowhere in the bill is the term "indigency" defined. Therefore, a board of judges hearing criminal cases shall be established by each county to determine indigency in their county and thus indigency status differs from county to county. Under the Indigent Health Care Act, indigency is set by the state and each county must apply the same guidelines to assure equal application of the law.

*Id.* Again, you do not elaborate on your constitutional concern. Given the general nature of your question and because article 1.051 does contain a definition of "indigent," albeit a flexible one, we address it in brief.

The legislature has defined "indigency" and provided a flexible standard applicable to all counties for the purposes of appointing counsel to indigent defendants. While Senate Bill 7 did not include a definition of "indigency," article 1.051 of the Code of Criminal Procedure does. Subsection (b) of article 1.051 specifically provides: "For the purposes of this article and Articles 26.04 [procedures for appointing counsel] and 26.05 [compensation of appointed counsel] of this code, 'indigent' means a person who is not financially able to employ counsel." TEX. CODE CRIM. PROC. ANN. art. 1.051(b) (Vernon Supp. 2002). It is the responsibility of the trial judge to determine whether a defendant is indigent and must have counsel appointed. *See Oliver v. State,* 872 S.W.2d 713, 714-16 (Tex. Crim. App. 1994) (en banc). Article 26.04(a) directs the judges of the courts trying criminal cases in a county to establish countywide procedures for "timely and fairly appointing counsel for an indigent defendant in the county" consistent with, among other provisions,

the requirements of article 26.04 and article 1.051. TEX. CODE CRIM. PROC. ANN. art. 26.04(a) (Vernon Supp. 2002). Article 26.04(*l*) requires procedures adopted under subsection (a) to include procedures and financial standards for determining whether a defendant is indigent. *See id.* art. 26.04(*l*). Article 26.04(m) provides that in determining whether a defendant is "indigent," a court or court's designee may consider the defendant's income and its source, assets, property, outstanding obligations, expenses, dependents, and spousal income available to the dependent. *See id.* art. 26.04(m). Subsection (m) also provides that the court may not consider whether the defendant has posted or is capable of posting bail except to the extent it reflects on the defendant's financial circumstances measured by the listed considerations which the court may take into account. *See id.*

The indigency standard provided by the legislature for the purposes of appointing counsel under article 1.051 is arguably more elastic than the standard in the Indigent Health Care Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 61.006(b) (Vernon Supp. 2002) ("The minimum [indigent] eligibility standards must incorporate a net income eligibility level equal to 21 percent of the federal poverty level based on the federal Office of Management and Budget poverty index."). It is quite possible that particular components of the standard may differ in different counties depending on the counties' size, resources, and average or median income. *See, e.g.,* Annette Fuller, *Indigent defense law 'nightmare' for some,* DALLAS MORNING NEWS, June 6, 2002, at 38A. ("Income guidelines for indigents vary from county to county.").

However, we do not believe that a court would find the article 1.051 indigency standard because of its relative flexibility violates, on its face, the state and federal guarantees of equal protection. As the United States Supreme Court has said: "The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,' nor does it require the State to 'equalize economic conditions.'" *Moffitt,* 417 U.S. at 612 (citations omitted); *see also Stamos,* 695 S.W.2d at 558 (burden of proof against presumption of constitutionality is on party attacking the constitutionality of legislative act). The indigency standard will necessarily vary in different counties because of the varying incomes and cost of living measures in the counties. We are unclear as to the statutory classification with which you are concerned. The statutory definition of "indigent" does not classify persons on the basis of race or otherwise. And, again, you do not identify or assert a constitutionally protected, fundamental right implicated by the indigency standard. We note that the lack of a more definite indigency standard does not, by itself, deny or abridge indigent criminal defendants' right to counsel or substantive due process. The discretion given to counties to determine what constitutes inability to employ counsel taking into account the statutory factors might give rise to arbitrary or discriminatory application of the standard violative of equal protection principles. *See Yick Wo v. Hopkins,* 118 U.S. 356 (1886). However, no such facts are before us and, in any case, this office does not make determinations requiring resolutions of fact questions in attorney general opinions.[5]

---

[5]*See* JC-0020 (1999) at 2 ("[I]nvestigation and resolution of fact questions . . . cannot be done in the opinion process."); M-187 (1968) at 3 ("[T]his office is without authority to make . . . factual determinations."); O-2911 (1940) at 2 ("[T]his . . . presents a fact question which we are unable to answer.").

## S U M M A R Y

A court would likely find that article 1.051(c) of the Code of Criminal Procedure, as amended by the Texas Fair Defense Act, requiring that counsel for indigent criminal defendants be appointed within one day of the defendant's request in populous counties and within three days of the request in less populous counties does not violate the equal protection guarantees of the state and federal constitutions. The legislature has defined "indigency" and provided a flexible standard applicable to all counties for the purposes of appointing counsel to indigent defendants under article 1.051. A court would likely find that the article 1.051 indigency standard because of its relative flexibility does not violate, on its face, the state and federal guarantees of equal protection.

Very truly yours,

JOHN CORNYN
Attorney General of Texas


HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee