**TEXAS PUBLIC BUILDING
AUTHORITY, Relator,**

v.

**Jim MATTOX, Attorney
General, Respondent.**

No. C–3793.

Supreme Court of Texas.

March 20, 1985.

Reynolds, Allen & Cook, Joe H. Reynolds, M. Paul Martin and John W. Fainter, Jr., Houston, for relator.

Jim Mattox, Atty. Gen., Susan Lee Voss and Bruce Youngblood, Asst. Attys. Gen., Austin, for respondent.

HILL, Chief Justice.

In this original proceeding the Texas Public Building Authority seeks a writ of mandamus directing the Honorable Jim Mattox, Attorney General of the State of Texas, to approve the issuance of $10,500,-000 in revenue bonds. The bonds are designated as Texas Public Building Authority Revenue Bonds (Texas Youth Council, Texas Rehabilitation Commission State Office Building Project), Series 1984. The Authority submitted the bonds to the Attorney General who refused to approve them, stating his opinion that the proposed issuance is in direct conflict with the provisions of Article III, Sections 49 and 49a of the Texas Constitution. We hold that neither the bond issuance nor the Act authorizing the issuance contravenes the Texas Constitution. We conditionally grant the requested relief.

There is no dispute as to the relevant facts concerning the matter before us. In the dozen years from 1972 to 1984, the office space requirements of state agencies quartered in Travis County more than tri-pled. The accompanying rental obligations necessary to meet this growing need for space more than quadrupled during the same time frame. In this context, the Legislature enacted the original version of the Texas Public Building Authority Act in 1983. *See* Texas Public Building Authority Act, Ch. 700, 1983 Tex.Gen.Laws 4360, *repealed by* Act of July 12, 1984, Ch. 5, § 34, 1984 Tex.Gen.Laws, 2nd Called Session 10, 20.

Shortly after passage of the Act in the Regular Session of the 68th Legislature, the Attorney General expressed several reservations concerning the propriety of the issuance of bonds under that act. In response, the Governor included in his call for the Second Called Session of the 68th Legislature an amendment to the original act. The Authority, as it presently exists, was created by an act of the Legislature during this special session in the summer months of 1984. *See* TEX.REV.CIV.STAT. ANN. art. 601d (Vernon Supp.1985) (the Act).

The Authority is empowered to provide for the financing, acquisition, construction, repair, and renovation of buildings used by state agencies. TEX.REV.CIV.STAT. ANN. art. 601d, § 2 (Vernon Supp.1985). The Act provides for a Board of Directors composed of three members, each of whom is appointed by the Governor and confirmed by the Senate, to serve as the Authority's governing body. Section 9 of the Act authorizes the Board to issue and sell bonds to finance the acquisition, construction or improvement of buildings used by state agencies. Section 10 requires the Legislature to authorize each specific project for which the bonds are to be issued and the maximum amount of bonded indebtedness that may be incurred by the Authority through the issuance and sale of bonds for a specific project.

Section 12 of the Act addresses the manner of repayment of bonds. Subsection 12(a) permits the Board to provide for the payment of the principal of and interest on the bonds by (1) pledging all or any part of the designated rents, issues and profits

from leasing a building to the state through the State Purchasing and General Services Commission (the Commission) or occupying or using state agency, or (2) obtaining funds from any other source lawfully available to the Authority. Section 26 of the Act provides for the payment of rents and fees to the Authority by the Commission from the State Lease Fund. Subsection 12(d) provides as follows:

> All lease contracts entered into under this Act shall be subject to the appropriation by the legislature of funds necessary to cover the provisions of the lease, except that if at any time the state fails or refuses to pay the rental provided in such a lease contract or fails or refuses to renew an existing lease contract at a rental provided to be paid, the board may lease or sublease the property covered by the lease contract to any person or entity on terms that the board determines.

Section 13 of the Act expressly provides that:

> (a) *Bonds issued under this Act are not debts of the state* or any agency, political corporation, or political subdivision of the state *and are not a pledge of the faith and credit of any of them.* The bonds are payable solely from revenue as provided by this Act.
>
> (b) The bonds must contain on their face a statement to the effect that:
>
> (1) neither the state nor an agency, political corporation, or political subdivision of the state is obligated to pay the principal of or interest on the bonds except as provided by this Act; and
>
> (2) neither the faith and credit nor the taxing power of the state or any agency, political corporation, or political subdivision of the state is pledged to the payment of the principal of or interest on the bonds.

[Emphasis added.]

Faced with the need to provide buildings and office space in which to house state agencies, the Legislature expressly approved two high priority projects in section 24 of the Act—the purchase and renovation of the Texas Employment Commission property and the project involved in this case—construction related to the Texas Youth Commission, Texas Rehabilitation Commission state office building. Pursuant to this section, the Board adopted a resolution authorizing the issuance of bonds to finance the construction of the Texas Youth Commission, Texas Rehabilitation Commission state office building. In its resolution, the Board approved (1) a Lease Agreement between the Authority and the Commission to provide the revenues necessary to pay the bonds, (2) a Trust Indenture with Allied Bank of Texas, as Trustee, providing the details of the bond issuance, and (3) a Bond Purchase Agreement submitted to the Authority by a group of underwriters.

The Lease Agreement provides in section 7.1 that it shall remain in effect until the bonds have been fully paid. Section 5.10 recognizes that payments under the Lease Agreement shall be made from the State Lease Fund and that $7,000,000 has already been appropriated by the Legislature for that purpose. Section 7.2 deals with the termination of the Lease Agreement and provides that the Authority may exclude the Commission from possession of the project and lease the project to another party in the event the Commission is unable to perform its duties under the Lease Agreement. Finally, the Authority, in section 5.6, expressly acknowledges that the Commission's obligation to make payments under the Lease Agreement is subject to, and dependent upon, appropriations by the Legislature of funds necessary to make such payments.

The Trust Indenture, in several important instances, reiterates many of the key provisions of the Act and the Lease Agreement. For example, section 2.05 states that the bonds "are not and shall never in any event become general obligations of the Authority but are special and limited obligations payable solely and only from the Pledged Revenues ...." This section also provides that the State of Texas does not pledge either its faith and credit or its taxing power to the payment of the bonds.

Section 4.01 provides, in pertinent part, as follows:

> No recourse shall be had for any claim based on this Indenture or the Bonds, including but not limited to the payment of the principal of, or premium, or interest on, the Bonds, against any director, member, officer, agent, or employee, past, present, or future, of the State of Texas, any political subdivision or other entity created thereby, or the Authority or the Commission, as such, either directly or through the Authority or the Commission, under any constitutional provision, statute, or rule of law, or by the enforcement of any assessment or penalty or by any legal or equitable proceeding, or otherwise, all such liability and claims being hereby expressly waived and released by the Trustee and the Bondholders as a condition of, and as consideration for, the execution of this Indenture and the issuance of the Bonds.

In the event of default, section 6.03 of the Indenture provides that the Trustee may, among other things, enforce the rights of the bondholders and the Authority or bring suit upon the agreement or the bonds, but any judgment it obtains against the Authority will be enforceable only against the specific assigned payments, funds, and accounts in the custody of the Trustee. Additionally, no deficiency judgment may be obtained against any assets of, or the general credit of, the Authority, the Commission or the State of Texas.

The bonds themselves prominently provide the following notice to bond purchasers:

> *THE OWNER HEREOF SPECIFICALLY UNDERSTANDS by acceptance of this Bond that the Bonds are not debts of the State of Texas or any agency, political corporation, or political subdivision thereof and are not a pledge of the faith and credit of any of them, but are payable solely from the Pledged Revenues.* Neither the State of Texas nor an agency, political corporation, or political subdivision of the State is obligated to pay the principal of, premium, if any, or the interest on the Bonds except as provided in the Act and neither the faith and credit nor the taxing power of the State or any agency, political corporation, or political subdivision of the State is pledged to the payment of the principal of, premium, if any, or interest on the Bonds.

[Emphasis added.]

Pursuant to section 16 of the Act, the Authority submitted the bonds to the Attorney General for examination and he refused to approve their issuance citing Article III, Sections 49 and 49a of the Texas Constitution. The Attorney General has not questioned the sufficiency or adequacy of the procedural steps followed by the Authority with regard to the issuance of the bonds. In his brief filed with this court, the Attorney General has urged the additional contentions that the bond issuance contravenes Article I, Section 17, Article III, Section 44, and Article VIII, Section 6 of the Texas Constitution. The Attorney General has pointed to no specific item in the various referenced documents which provide him grounds for disapproving the bonds aside from these constitutional questions.

■■■ We begin our analysis of the issues presented in this case by presuming, as we must, the constitutionality of an act of the Legislature. *See Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983). The burden is upon the party attacking the constitutionality of an act of the Legislature. *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974). The courts of this state will hold an act unconstitutional only if a specific provision inhibits the legislation, or such is clearly implied. *Shepherd v. San Jacinto Junior College District*, 363 S.W.2d 742, 743 (Tex.1962).

■■■ We first consider the Attorney General's argument that issuance of the bonds will violate Article III, Section 49 of the Texas Constitution. That section provides as follows:

> No debt shall be created by or on behalf of the State, except to supply casual defi-

ciencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; and the debt created to supply deficiencies in the revenue, shall never exceed in the aggregate at any one time two hundred thousand dollars.

In *Texas National Guard Armory Board v. McCraw*, 132 Tex. 613, 126 S.W.2d 627 (1939), this court considered a statutory arrangement substantially the same as that which exists in the present case. We decided there that the plan did not violate article III, section 49. In that case, the Armory Board's governing authority proposed to issue revenue bonds to finance the construction of armory buildings. The bonds were to be payable "solely from the rents, issues and profits" derived from the leasing of the armories to the State of Texas through one of its agents, the Adjutant General.

The statute considered in *Armory Board* and the Act in this case have substantially similar provisions regarding the power to issue bonds to finance the construction of buildings and the method of repayment of the bonds. We held in *Armory Board,* as we had in *Brazos River Conservation and Reclamation District v. McCraw,* 126 Tex. 506, 91 S.W.2d 665, 672–73 (1936), that:

> [T]he bonds provided for by the Act under consideration would create no debt against the State of Texas; nor is the credit of the State pledged for the payment of such bonds, or interest thereon, or any part thereof. Such bonds would be payable solely from the rents, issues, and profits to be derived from the operation or leasing of the armory buildings; unless the Legislature, in the exercise of its power and discretion, should see fit, when making its biennium appropriations, to include therein a sufficient sum of money to pay such bonds, or any part thereof.

126 S.W.2d at 635.

We regard *Armory Board* as controlling authority in the instant case. No debt of the state is created by the Act's provisions. Section 13 thereof expressly provides that the bonds are not debts of the state or any agency, political corporation, or political subdivision of the state and are not a pledge of the faith and credit of any of them. Both the Trust Indenture and the Bonds themselves contain virtually identical disclaimers. While such provisions are not conclusive in and of themselves, they do indicate that the Legislature's intent in authorizing their issuance was to avoid conflict with article III, section 49. Given the clear intent of the Legislature in passing the Act and this court's previous approval of a virtually identical arrangement in *Armory Board,* we conclude that the Authority's proposed bond issuance is not in violation of article III, section 49. *See also City of Aransas Pass v. Keeling,* 112 Tex. 339, 247 S.W. 818 (1923).

■ We next consider whether the Act and the bond issuance violate article III, section 49a. That section provides that no appropriation bill can become law unless and until either the Comptroller of Public Accounts certifies that there will be sufficient anticipated revenues to meet the appropriation or the Legislature passes the bill by a four-fifths majority of each house. Because all future appropriations for the payment of rental by the Commission in accordance with the lease agreement will be subject to the procedures outlined in article III, section 49a, neither the Act nor the Lease Agreement constitutes a violation of this constitutional provision. In the absence of sufficient appropriations to pay future rentals, the Authority has the right under the Lease Agreement to terminate the lease. There are, at present, some seven million dollars in the State Lease Fund to pay rental fees as they become due. The Attorney General cites us to no authority supporting his assertions that the Act or Lease Agreement violates article III, section 49a, and we are satisfied that this appropriation and future appropriations to the State Lease Fund have and will satisfy the procedural requirements of article III, section 49a.

The Attorney General, in connection with both his article III, section 49, and article

VIII, section 6 arguments, attempts to distinguish this case from *Armory Board* on the ground that the lease involved there was a two-year renewable lease which coincided with the biennium appropriation while the lease in the present case will run until the bonds are fully paid. However, section 12(d) of the Act specifically provides that any lease contract entered into under the Act is subject to appropriation by the Legislature. The Lease Agreement contains an express provision confirming the requirements of Section 12(d). The *Armory Board* lease and the lease in the present case thus achieve the same result—the lessee's obligation is conditioned upon the Legislature's appropriation of the funds necessary to make rental payments.

▉ We have twice rejected arguments based on article VIII, section 6 in similar circumstances. This provision forbids appropriations of money for a term longer than two years. In *City of Big Spring v. Board of Control*, 404 S.W.2d 810 (Tex. 1966), this court reviewed a contract whereby the city agreed to provide water to a local state hospital at a fixed rate per gallon as long as the state hospital remained at its current site. The city brought an action to declare the contract void, in part, on the ground that the State Board of Control lacked the authority to execute the contract in the face of article VIII, section 6. Relying on the case of *Charles Scribner's Sons v. Marrs*, 114 Tex. 11, 262 S.W. 722, 725 (1924), this court held a contract which does *not* bind the state to purchase a fixed quantity of goods or services each year, but rather which binds the state only to purchase those quantities which within its sole discretion it determines it needs, does not violate the article VIII, section 6 prohibition on appropriations of money for a term longer than two years. 404 S.W.2d at 814–15. We believe these two cases are dispositive of the arguments raised by the Attorney General under article VIII, section 6.

▉ The Attorney General argues that any appropriation by the Legislature to make rental payments to the Authority

pursuant to the lease agreement must necessarily violate the article III, section 44 prohibition against the making of grants of money out of the State Treasury to an individual on a claim when the same shall not have been provided for by pre-existing law. The execution of the Lease Agreement between the Authority and the Commission under the precise terms contained therein is expressly authorized by Section 12 of the Act. The manner of repayment of the bonds and the manner in which the rents and fees to be paid by the Commission are to be calculated are likewise expressly authorized by the Act. We believe that when expressly authorized by a pre-existing statute, an appropriation of funds in furtherance of an authorized project does not violate article III, section 44.

The purpose of the article III, section 44 proscription is the prevention of "raids" upon the State Treasury by private individuals or entities. We consider inapposite authorities such as *Austin National Bank v. Sheppard*, 123 Tex. 272, 71 S.W.2d 242 (1934), because here, the Legislature itself has created the Authority and authorized the execution of contracts between it and state agencies, which contracts do not otherwise violate the state constitution. Appropriations made in furtherance of those contracts are fully "provided for by pre-existing law." Thus, appropriations made in the future by the Legislature in fulfillment of the Commission's obligations under the Lease Agreement with the Authority are not proscribed by article III, section 44.

▉ Finally, we find no merit in the Attorney General's arguments that: (1) in the event of default on the bonds, the project to be constructed would become subject to foreclosure of a lien thereon or enforcement of a security interest therein; and (2) by creating an arrangement whereby private dominion over governmental facilities is possible, the Act and Lease Agreement constitute an irrevocable or uncontrollable grant of special privileges or immunities, in violation of Article I, Section 17 of the Texas Constitution. Neither the bonds nor the Trust Indenture provide bondholders or

the trustee with a lien on the project. Default on the bonds cannot result in a foreclosure on the project itself.

We conclude that the Authority's prayer for the writ of mandamus to approve the bonds is proper. We are confident that the Attorney General will abide by our decision. A writ of mandamus will issue only if he does not do so.