

# THE ATTORNEY GENERAL
## OF TEXAS

October 25, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Honorable Mike Millsap
House Administration
Texas House of Representatives
P. O. Box 2910
Austin, Texas  78769

Opinion No.  JM-970

Re:  Constitutionality of a plan to finance  renovation of the Capitol  (RQ-1468)

Dear Representative Millsap:

You ask about the authority of the Texas Public Finance Authority to  issue  bonds under  article  601d-2,  V.T.C.S. Specifically, you  ask whether  the authority  may,  without executing a lease with  the State Preservation Board,   issue bonds for the  renovation of the  State Capitol and  provide that the payment of principal and interest on the bonds will be paid  from  appropriations  made directly  to  the  Texas Public Finance Authority.

The Texas Public Finance Authority (the authority)  was created by the  68th Legislature and  was originally  called the Texas Public Building Authority.  Acts 1984,  68th  Leg., 2d C.S., ch. 5, at 15 (repealing original version of  Public Building Authority Act,  Acts 1983, 68th  Leg., ch. 700,  at 4360).  A 1987 enactment changed  the name of the  authority from the Texas Public Building Authority to the Texas Public Finance Authority.  Acts 1987, 70th Leg., 2nd C.S., ch.  75, p. 234.  The general provisions governing the authority  are set out in article 601d, V.T.C.S.

Under article  601d the  authority may  issue and  sell bonds for the financing, acquisition, construction,  repair, and  renovation  of  buildings   used  by  state   agencies. V.T.C.S. art. 601d, § 9.   Section 13 states that the  bonds are payable "solely from revenue  as provided by this  Act"; and section 12(a) states that the authority may provide  for the payment of the  principal and interest  on the bonds  by (1) pledging all or part of the designated rents, issues and profits from leasing a building to the state or (2)  from any other source lawfully available  to the authority.   Section 13 provides that bonds issued  under article 601d are not  a debt of the  state or any  state agency and  that the  bonds must contain on their face a statement to that effect.  Id.

§ 13.  The legislature must specifically authorize any project for which bonds are sold under article 601d, and the bonds must be approved by the attorney general.  Id. §§ 10, 16.

Soon after the enactment of article 601d, the authority proposed a bond issuance to finance the construction of a state office building for the Texas Youth Commission and the Texas Rehabilitation Commission.  The attorney general, arguing that the bond issuance would violate several constitutional provisions, refused to approve the proposed bond issuance.  Therefore, the authority applied to the Texas Supreme Court for a writ of mandamus directing the attorney general to approve the bond issuance. Texas Public Building Authority v. Mattox, 686 S.W.2d 924 (Tex. 1985).  The attorney general argued that the bond issuance would be in violation of article III, section 49, which prohibits the creation of debt "by or on behalf of the state."  The court rejected that argument by pointing out that article 601d expressly provides that the bonds are not debts of the state and not a pledge of the state's full faith and credit.  The court also rejected the attorney general's argument that the proposed bond issuance would violate article III, section 44, which prohibits the appropriation of money to any individual on a claim that is not provided for by pre-existing law.[1]  We will return to the court's discussion of article III, section 44, after we examine the provisions of the statute you ask about, article 601d-2, V.T.C.S.

After the Supreme Court upheld the provisions of article 601d, the legislature enacted article 601d-2 to provide a means to finance renovation of the State Capitol.  Acts 1987, 70th Leg., ch. 626, p. 2407.  Article 601d-2 authorizes the board of directors of the authority to issue and sell bonds for that purpose.  V.T.C.S. art. 601d-2, § 2.  Proceeds from such bonds are to be deposited in the state treasury to the account of the State Preservation Board.  Id. § 3(a).  Article 601d-2 appropriates those funds to the State Preservation Board for projects for the repair and renovation of the State Capitol.  Id. § 3(b).  Section 4 of article 601d-2 provides:

---

1.  The attorney general also argued that the proposed bond issuance would be in violation of Article I, section 17; Article III, section 49a; and Article VIII, section 6, of the Texas Constitution.  The court rejected all of those arguments.

> (a) The board [of the Public Finance Authority] may provide for the repayment of the principal and interest on the bonds issued under this Act from any source of funds lawfully available to the board.
>
> (b) From funds appropriated for the purpose, the State Preservation Board shall pay to the board under a lease agreement an amount determined by the board to be sufficient to:
>
> (1) pay the principal and interest on the bonds;
>
> (2) maintain any reserve fund necessary to service the debt; and
>
> (3) reimburse the authority for other costs and expenses incurred by the authority relating to a project under this Act or to outstanding bonds.
>
> (c) Bonds payable from money appropriated by the legislature shall not mature or be subject to redemption before September 1, 1989, and the date of the first interest payment to be made from appropriated money shall not be scheduled to occur before September 1, 1989.

Section 6 provides that the State Preservation Board may enter into lease agreements under article 601d-2 and may spend appropriated funds or other funds for the purpose of making lease payments. Section 5 provides that bonds issued under article 601d-2 are subject to a number of provisions of the Public Finance Authority Act, including section 13, which provides that bonds issued under article 601d are not a debt of the state or any state agency and that the bonds must contain on their face a statement to that effect. Your question is whether the authority may, without executing a lease with the State Preservation Board, issue bonds for the renovation of the State Capitol and "repay the principal of and interest on the bonds from direct legislative appropriations for that purpose."

Although the authority's power to issue bonds for the repair and renovation of the State Capitol is not explicitly made dependent on the existence of a lease with the State Preservation Board, article 601d-2 clearly contemplates that

bonds issued pursuant to that article will be paid from revenues from a lease with the State Preservation Board. Also, the incorporation of section 13 of the Texas Public Finance Authority Act, which provides that the bonds are to be revenue bonds,[2] indicates that the legislature intended

---

2. Article 601d gives the authority power to lease a building financed with bonds issued under that article to any person or entity if the state fails or refuses to pay rental on the building. V.T.C.S. art. 601d, § 12(d). Thus, there would be a potential source of revenue from which to pay principal and interest on the bonds even if the legislature failed to appropriate money for the lease of a building financed under article 601d. However, even if there were a lease between the authority and the State Preservation Board, bonds issued under article 601d-2 would look less like revenue bonds than bonds issued under article 601d since the legislature did not even attempt to give the authority power to lease the State Capitol to a person or entity other than the state.

On the subject of a lease of the State Capitol to the State Preservation Board from the authority, it is interesting to note section 11(a) of article 601d, which provides:

> Property financed by the authority under this Act does not become part of other property to which it may be attached or affixed or into which it may be incorporated, regardless of whether the other property is real or personal. The rights of the State Preservation Board in property financed by the authority under this Act are those of a lessee, and a person claiming under or through the State Preservation Board does not acquire any greater rights with respect to that property.

That section tracks section 7 of article 601d-2, V.T.C.S. Both provisions overrule the common law rule that fixtures become part of the real property to which they are attached. The provisions are important to the schemes provided for in articles 601d and 601d-2 in instances in which the bond money is used for repair or renovation of existing state buildings because they allow the state to assume the role of lessee of improvements to state buildings. It is hard to

(Footnote Continued)

that the bonds would be payable from revenue from the lease of the State Capitol to the State Preservation Board. However, we need not determine whether the legislature intended article 601d-2 to give the authority power to issue bonds without executing a lease with the State Preservation Board because we conclude that the proposal you ask about would not be permissible under article III, section 44, of the Texas Constitution.

Article III, section 44, of the Texas Constitution provides:

> The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law.

This means that no money may be appropriated unless, at the time the appropriation is made, there is already in force some valid law constituting the claim to be paid a legal and valid obligation of the state. <u>Austin National Bank v. Sheppard</u>, 71 S.W.2d 242 (Tex. 1934); <u>State v. Perlstein</u>, 79 S.W.2d 143 (Tex. Civ. App. - Austin 1934, writ dism'd).

In <u>Texas Public Building Authority v. Mattox</u>, 686 S.W.2d 924, the court responded to the attorney general's argument that appropriations for the purpose of making lease payments to the authority would violate article III, section 44, as follows:

---

(Footnote Continued)
imagine what the substance of the state's leasehold would be, however, if bonds issued under article 601d or 601d-2 were used, for example, for sand-blasting.

> The Attorney General argues that any
> appropriation by the Legislature to make
> rental payments to the Authority pursuant to
> the lease agreement must necessarily violate
> the article III, section 44 prohibition
> against the making of grants of money out of
> the State Treasury to an individual on a
> claim when the same shall not have been pro-
> vided for by pre-existing law.  The execution
> of the Lease Agreement between the Authority
> and the Commission under the precise terms
> contained therein is expressly authorized by
> Section 12 of the Act.  The manner of
> repayment of the bonds and the manner in
> which the rents and fees to be paid by the
> Commission are to be calculated are likewise
> expressly authorized by the Act.  We believe
> that when expressly authorized by a
> pre-existing statute, an appropriation of
> funds in furtherance of an authorized project
> does not violate article III, section 44.
>
> The purpose of the article III, section 44
> proscription is the prevention of 'raids'
> upon the State Treasury by private individ-
> uals or entities.  We consider inapposite
> authorities such as _Austin National Bank v._
> _Sheppard_, 123 Tex. 272, 71 S.W.2d 242 (1934),
> because here, the Legislature itself has
> created the Authority and authorized the
> execution of contracts between it and state
> agencies, which contracts do not otherwise
> violate the state constitution.  Appropria-
> tions made in furtherance of those contracts
> are fully 'provided for by pre-existing law.'
> Thus, appropriations made in the future by
> the Legislature in fulfillment of the Commis-
> sion's obligations under the Lease Agreement
> with the Authority are not proscribed by
> article III, section 44.

686 S.W.2d at 929.  In short, the Supreme Court found that
appropriations to the authority for the purpose of making
lease payments were proper because the state agencies
involved had pre-existing authority to enter into leases for
building space.  The proposal you ask about, however, would
involve legislative appropriations made directly to the
authority for the purpose of paying principal and interest
on the bonds.  Article 601d-2 expressly provides that the
bonds are not legal obligations of the state and that they

are revenue bonds.  Thus, not only would an appropriation for the purpose of paying principal and interest on bonds issued under article 601d-2 be unauthorized by pre-existing law, it would be an appropriation to pay for something that the legislature had expressly proclaimed itself unobligated to pay.  See Attorney General Letter Advisory No. 107 (1975).

It has been suggested that the proposal you ask about would not violate article III, section 44, because an appropriation to the authority would not be an appropriation "on a claim."[3]  See Jones, The Future of Moral Obligation Bonds as a Method of Government Finance in Texas, 54 Tex. L. Rev. 314, 328-30 (1976).  The suggestion is that an appropriation to the authority would avert default on the bonds and would necessarily avert the assertion of any "claims," i.e., lawsuits.  Id.  We disagree with that suggestion.  If bondholders did sue the state for payment, an appropriation to pay those claims would clearly violate article III, section 44.  Certainly it follows that the legislature cannot circumvent article III, section 44, by appropriating money for payments it is not obligated to make in order to prevent the assertion of "claims" not provided for by pre-existing law.  Therefore, we conclude that the proposal you ask about would be impermissible under article III, section 44, of the Texas Constitution.

## S U M M A R Y

A proposal whereby the Texas Public Finance Authority would issue "revenue" bonds and provide that principal and interest on

---

3.  It has also been suggested that an appropriation to the authority would not be an appropriation to an individual.  We think, however, that an appropriation to the authority for the purpose of paying bondholders is, in effect, an appropriation to individuals.  See generally Austin National Bank v. Sheppard, 71 S.W.2d 242 (Tex. 1934).

the bonds would be paid from direct legislative appropriations would be impermissible under article III, section 44, of the Texas Constitution.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Sarah Woelk
Assistant Attorney General