TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-02-00661-CV






In re the Commitment of William P. Browning








FROM THE DISTRICT COURT OF TRAVIS COUNTY, (1) 250TH JUDICIAL DISTRICT

NO. 01-0805024-CV, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





O P I N I O N




 William P. Browning was civilly committed as a sexually violent predator pursuant
to title 11, chapter 841 of the health and safety code. See Tex. Health & Safety Code Ann.
§§ 841.001-.147 (West 2003). A jury found that Browning suffers from a behavioral abnormality
that makes him likely to engage in a predatory act of sexual violence. The trial court entered a final
judgment and order of civil commitment. Browning appeals, claiming the commitment proceedings
established by the statute are punitive rather than civil in nature. He reasons that his commitment 
is therefore invalid because he was denied several constitutional safeguards attendant to a criminal
prosecution. Because we find the statute to be civil in nature, we affirm the district court's final
judgment and order of civil commitment.


BACKGROUND

The Civil Commitment Statute 

 In 1999, the legislature amended the health and safety code and enacted chapter
841--a statutory scheme for the civil commitment of sexually violent predators. Act of May 30,
1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143-52 (codified at Tex. Health
& Safety Code Ann. §§ 841.001-.147). The first section of chapter 841--entitled Legislative
Findings--states:


The legislature finds that a small but extremely dangerous group of sexually violent
predators exists and that those predators have a behavioral abnormality that is not
amenable to traditional mental illness treatment modalities and that makes the
predators likely to engage in repeated predatory acts of sexual violence. The
legislature finds that the existing involuntary commitment provisions of Subtitle C,
Title 7, are inadequate to address the risk of repeated predatory behavior that sexually
violent predators pose to society. The legislature further finds that treatment
modalities for sexually violent predators are different from the traditional treatment
modalities for persons appropriate for involuntary commitment under Subtitle C,
Title 7. Thus, the legislature finds that a civil commitment procedure for the
long-term supervision and treatment of sexually violent predators is necessary and
in the interest of the state.



Tex. Health & Safety Code Ann. § 841.001. The remainder of chapter 841 sets out, in detail, a civil-commitment procedure for sexually violent predators. See generally id. §§ 841.002-.147.

 A sexually violent predator is defined as a person who both (1) is a repeat sexually
violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage
in a predatory act of sexual violence. Id. § 841.003(a). A repeat sexually violent offender is, in turn, 
defined as a person convicted, or found not guilty by reason of insanity, of more than one sexually
violent offense. (2) A behavioral abnormality is defined as "a congenital or acquired condition that,
by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually
violent offense, to the extent that the person becomes a menace to the health and safety of another
person." Id. § 841.002(2).

 Before the release or discharge of a person who either (1) is serving a sentence for
a sexually violent offense or (2) has been committed after having been adjudged not guilty of a
sexually violent offense by reason of insanity, his records are forwarded to a multidisciplinary team (3)
which is to:



 determine whether the person is a repeat sexually violent offender and whether
the person is likely to commit a sexually violent offense after release or
discharge;

 give notice of that determination to the department of criminal justice or the
department of mental health and mental retardation, as appropriate; and 

 recommend the assessment of the person for a behavioral abnormality, as
appropriate.




See id. §§ 841.021-.022. After the multidisciplinary team gives its notice and recommendation to
either the department of criminal justice or the department of mental health and mental retardation,
that department must "determine whether the person suffers from a behavioral abnormality that
makes the person likely to engage in a predatory act of sexual violence." Id. § 841.023(a).

 To "aid in the determination," the department is required to have an expert examine
the person and "make a clinical assessment based on testing for psychopathy, a clinical interview,
and other appropriate assessments and techniques." Id. If the department determines that the person
suffers from such a behavioral abnormality, it is to inform an attorney in the state's prison
prosecution unit, (4) who then has the option to file a petition and initiate a trial. See id. §§ 841.023(b),
.041. Once a petition is filed, both the person and the state are entitled to an immediate examination
of the person by an expert. See id. § 841.061(c).

 If the state's attorney initiates a trial, she is required to prove beyond a reasonable
doubt that the person is a sexually violent predator. Id. § 841.062(a). The person is afforded several
additional procedural rights during trial as well, such as the right to be represented by an attorney
from the office of state counsel for offenders, to demand a jury trial, to appear at trial and present
evidence, to cross-examine witnesses, and to view and copy all petitions and reports in the court file. 
See id. § 841.005, .061. If a person demands a jury trial, he can be committed only on a unanimous
verdict. See id. § 841.062(b).

 If the trial results in a determination that the person is a sexually violent predator, the
judge is required to "commit the person for outpatient treatment and supervision to be coordinated
by [a] case manager," (5) and impose on the person certain "requirements necessary to ensure the
person's compliance with treatment and supervision and to protect the community." See id.
§§ 841.081-.082. Such requirements include among other things:



 requiring the person to reside in a particular location;

 prohibiting the person's contact with the victim or any potential victim;

 prohibiting the person's use of alcohol or a controlled substance;

 requiring the person's participation in a specific course of treatment;

 requiring the person to submit to tracking [i.e., electronic monitoring or other
technological service designed to track a person's location];

 prohibiting the person from changing his residence or leaving the state without
prior authorization by the judge; and

 any other requirements determined necessary by the judge. 




See id. § 841.082. The statute makes violation of any of these imposed requirements a criminal
offense. See id. § 841.085.

The Trial 

 Browning was convicted of the aggravated sexual assault of two children and the
aggravated kidnaping of another. He was sentenced to twelve years' imprisonment for these crimes. 
Prior to his release from prison, the state sought to have him civilly committed as a sexually violent
predator.

 Before trial, the state invoked its right to have Browning investigated by an expert. 
After interviewing Browning and conducting clinical tests, Dr. Rahn Baily--the psychiatrist ordered
by the court to examine Browning--concluded that Browning has a behavioral abnormality that
makes him likely to engage in predatory acts of sexual violence.

 The state also called Dr. Charles Woodrick, a correctional psychologist under contract
with the department of criminal justice, who examined Browning to aid the department in making
its determination of whether Browning's case should be forwarded to the state's attorney, i.e.,
whether, in the opinion of the department, Browning suffered from the requisite behavioral
abnormality. Dr. Woodrick testified that, based on his interview with Browning and his review of
the department's files, he diagnosed Browning with pedophilia, which he described as a behavioral
abnormality. He also testified that Browning was at a high risk for reoffending.

 After deliberating, the jury returned a verdict finding that Browning is a sexually
violent predator. The court then entered judgment on the verdict and ordered that Browning be
"committed for outpatient treatment and supervision to be coordinated by a case manager . . . ." The
court's judgment also imposes a series of "commitment requirements," ordering among other things
that Browning shall reside in Travis County, refrain from changing his residence without prior court
authorization, refrain from using alcohol or other controlled substances, participate in a specific
course of treatment to be determined by the interagency council on sex offender treatment, and
submit to tracking by a GPS electronic monitor.

 On appeal, Browning urges that the civil-commitment proceedings established by
statute are punitive and criminal, rather than civil in nature. He therefore reasons that he should have
been accorded the constitutional safeguards attendant to a criminal prosecution, including the
protections against double jeopardy, ex post facto laws, and self incrimination under the federal
constitution. He also argues that the statute and the court's final order are unconstitutionally vague,
that the statute violates the separation of powers, and that the court erred in admitting evidence of
his prior convictions after he stipulated to them.


DISCUSSION 


Nature of the Proceeding

 We initially note that the United States Supreme Court has found a very similar
Kansas statute to be civil in nature and that the Beaumont court of appeals has found the Texas
statute to be civil as well. See Kansas v. Hendricks, 521 U.S. 346, 360-69 (1997); Beasley v. Molett,
95 S.W.3d 590, 607-08 (Tex. App.--Beaumont 2002, pet. filed); see also Allen v. Illinois, 478 U.S.
364, 375 (1986) (somewhat similar Illinois statute deemed civil). Browning argues that the Kansas
statute is significantly different from the Texas statute and insists that the Beaumont court simply
made the wrong decision. We reject Browning's contentions and join the Beaumont court in finding
the civil-commitment statute to be nonpunitive and therefore civil in nature.

 The categorization of a proceeding as civil or criminal is "first of all a question of
statutory construction." Hendricks, 521 U.S. at 361 (quoting Allen, 478 U.S. at 368); see Beasley,
95 S.W.3d at 607. Our initial inquiry is therefore whether the legislature intended chapter 841 to be
a civil statute, i.e., whether it intended the civil-commitment proceedings to be conducted "in a
nonpunitive, noncriminal manner." See Allen, 478 U.S. at 368 (1986); Hendricks, 521 U.S. at 361;
Beasley, 95 S.W.3d at 607. Here, the legislature clearly manifested its intent by titling the statute
"civil commitment of sexually violent predators," see Act of May 30, 1999, 76th Leg., R.S., ch.
1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143, and by explicitly referring to "civil commitment"
in the statute. See, e.g., Tex. Health & Safety Code Ann. § 841.081, .082(a), .145(a), .146 (emphasis
added).

 But a label is not dispositive. See Hendricks, 521 U.S. at 361; Beasley, 95 S.W.3d
at 607. We will reject the manifest intent of the legislature only when a party challenging the statute
provides the clearest proof that the statute is so punitive, either in purpose or effect, as to negate the
legislature's expressed intention to deem it civil. Hendricks, 521 U.S. at 361; Beasley, 95 S.W.3d
at 607. In determining whether Browning has met this heavy burden, we consider whether the
sanction involves an affirmative disability or restraint; whether it has historically been regarded as
punishment; whether it comes into play only on a finding of scienter; whether its operation will
promote retribution and deterrence (the traditional aims of criminal punishment); whether the
behavior to which it applies is already a crime; whether an alternative purpose to which it may be
rationally connected is plausible; and whether it appears excessive in relation to the alternative
purpose assigned. Beasley, 95 S.W.3d at 607 (citing Kennedy v. Mendoza-Martinez, 372 U.S. 144,
168-69 (1963)); see Hendricks, 521 U.S. at 361-69.

 The statute undoubtedly subjects Browning to a series of affirmative restraints--he
is required to reside in a specific county, to accept treatment, and to submit to electronic monitoring. 
However, states are permitted to restrict the freedom of the dangerously mentally ill, and doing so
has historically been regarded as a legitimate non-punitive governmental objective. Hendricks, 521
U.S. at 363. The United States Supreme Court has stated that the confinement of mentally unstable
individuals who present a danger to the public is a classic example of nonpunitive detention. See
id. (internal quotation and citation omitted). Significantly, the Kansas statute more severely restrains
those committed than does the Texas statute. Under Kansas's scheme for commitment of sexually
violent predators, persons who are committed are confined in a secure facility, while persons
committed under the Texas statute are treated as an outpatient and required to submit to the several
restrictions discussed above. Compare Tex. Health & Safety Code Ann. §§ 841.081-.083, and
Beasley, 95 S.W.3d at 607, with Kan. Stat. Ann. § 59-29a07(a) (2002), and Hendricks, 521 U.S. at
353. It goes without saying that while Browning's liberty is indeed restrained, the intrusion is far
less restrictive than if he were confined in a secure facility in Kansas. And yet the Supreme Court
found commitment under the Kansas act to be civil in nature. See Hendricks, 521 U.S. at 360-69.

 The Texas statute does not implicate to any significant degree the two primary
objectives of criminal punishment--deterrence and retribution. The statute's purpose is not
retributive because it does not affix culpability for prior criminal conduct. See id. at 362. A person
may be committed because he suffers from a behavioral abnormality, i.e., a congenital or acquired
condition that by affecting the person's emotional or volitional capacity predisposes him to commit
a sexually violent offense. See Tex. Health & Safety Code Ann. §§ 841.002(2), .003(a); Beasley,
95 S.W.3d at 607. It is true that the statute also requires one to have been convicted, or found not
guilty by reason of insanity, of at least two sexually violent criminal offenses, but that fact alone does
not necessarily imply that the purpose of the statute is to punish offenders a second time for their
conduct. As the record in this case makes clear, (6) the primary purpose of requiring proof of prior
convictions is evidentiary. In other words, a person's history of sexually violent conduct is highly
relevant to whether he suffers from a behavioral abnormality making it difficult for him to control
his impulses to commit sexually violent offenses. (7) See In re Commitment of Mullens, 92 S.W.3d
881, 884 (Tex. App.--Beaumont 2002, no pet h.) ("[T]he offense showing under the Texas statute
. . . [is] received primarily to show the accused's mental condition and to aid in the prediction of
future behavior."); see also Hendricks, 521 U.S. at 362 (quoting Allen, 478 U.S. at 371). The fact
that the statute is "tied to criminal activity" is insufficient to render it punitive. Hendricks, 521 U.S.
at 362.

 Closely related to the issue of retribution is whether the statute requires a finding of
scienter--i.e., a criminally culpable mental state. The statute requires commitment to be based on
a finding that the person is a sexually violent predator, which means that the person both has a
behavioral abnormality--i.e., a congenital or acquired condition affecting his emotional or volitional
capacity that predisposes him to commit a sexually violent offense to the extent that he becomes a
menace to the health and safety of others--and has been either convicted, or found not guilty by
reason of insanity, of two or more sexually violent offenses. Browning argues that "by requiring
proof of prior criminal convictions, the statute is requiring proof of a criminally culpable mental
state." Browning is mistaken for two reasons. First, the statute does not require proof of criminal
convictions--one can be civilly committed after being found not guilty by reason of insanity. 
Second, even when the state relies on prior convictions, as in this case, the mere fact that the
underlying offenses involved scienter findings does not necessarily mean that commitment under this
statute requires such a finding. In finding the sex-offender registration statute to be civil in nature,
the court of criminal appeals stated:


Although a culpable mental state may be required with respect to some of the
underlying offenses, this does not answer the question of whether the registration
statute requires a culpable mental state. . . . [T]he statute becomes operational
automatically upon an offender's release. Therefore, the statute does not require a
culpable mental state with respect to the registration and notification provisions, and
we weigh this factor in favor of a finding that the statute is nonpunitive.



Rodriguez v. State, 93 S.W.3d 60, 73 (Tex. Crim. App. 2002).

 Similarly, the statute at issue in this case does not itself require a finding of scienter. 
As discussed above, a person is committed under the statute because he has a behavioral abnormality
that renders him dangerous to the community, and the purpose of requiring prior convictions is
primarily evidentiary. (8) Any scienter findings encompassed in prior convictions are entirely
incidental to and do not affect--in one way or the other--commitment under the act. See Beasley,
95 S.W.3d at 607 (Texas statute "involves no finding of scienter").

 Nor do we find that the statute implicates the other primary purpose of criminal
punishment--deterrence. A person is committed under the act because he has a behavioral
abnormality affecting his emotional or volitional capacity that makes it difficult for him to control
his propensity to commit acts of sexual violence. The Supreme Court reasoned in Hendricks that,
"[s]uch persons are . . . unlikely to be deterred by the threat of confinement." Hendricks, 521 U.S.
at 362-63. We agree. Moreover, we note that any incidental, marginal deterrent effect of Texas's
outpatient-treatment and monitoring scheme will necessarily be less than any deterrence effected by
Kansas's scheme of confinement. The purpose of the statute is to protect society from sexually
violent predators by incapacitating them to some extent and by treating to some degree their difficult-to-treat conditions.

 In his argument that deterrence is the primary purpose of the statute, Browning relies
heavily on section 841.085, which provides that "[a] person commits an offense if the person violates
a requirement imposed under [s]ection 841.082 [e.g., submitting to electronic monitoring]. An
offense under this section is a felony of the third degree." (9) Tex. Health & Safety Code Ann.
§ 81.085. Browning argues that the section attempts to deter persons "from engaging in future
criminal conduct." We disagree. The primary purposes of the statute are protection of the public
and treatment of the person. Section 841.085 does attempt to deter persons subject to civil
commitment from violating the terms and conditions of the civil commitment articulated in the
court's order. But it is deterrence from future criminal acts which is a purpose of criminal
punishment.

 The remaining factors for us to consider--whether the behavior to which the statute 
applies is already a crime; whether an alternative purpose for the statute exists to which it may
rationally be connected; and whether the statute appears excessive in relation to that alternative
purpose--all weigh in favor of the statute being deemed civil in nature. The statute does not
sanction criminal behavior--it focuses on the person's current condition. The statute's alternate
purposes have already been discussed. They are to protect the public from, and to provide treatment
to, sexually violent predators. Moreover, it is clear the statute is not excessive in relation to those
purposes. As we have noted, the Texas statute and its scheme for outpatient treatment is
significantly less severe than its Kansas counterpart that the Supreme Court has declared to be civil
in nature. See Hendricks, 521 U.S. at 360-69.

 After balancing the relevant factors, we conclude that Browning has failed to meet
his burden to show by clearest proof that the statute is so punitive in purpose or effect as to negate
the legislature's intention to deem it civil. Browning's first issue is overruled. (10)


Volitional Control 

 In his second issue, Browning claims that the court erred in refusing to submit to the
jury a question asking whether he had serious difficulty controlling his behavior. He claims that by
failing to ask this question of the jury, the court ran afoul of the United States Supreme Court's
decision in Kansas v. Crane. 534 U.S. 407, 413 (1997). In Crane, the Supreme Court required
"proof of serious difficulty in controlling behavior" before a person can be civilly committed as a
sexually violent predator. Id.; see also Mullens, 92 S.W.3d at 884. The Court did not articulate what
it meant by "serious," but stated that the difficulty, considering the nature of the psychiatric diagnosis
and the severity of the mental abnormality itself, must be sufficient to distinguish the committed
person from the "dangerous but typical [criminal] recidivist." Crane, 534 U.S. at 413.

 The charge of the court in this case included the following question: "Do you find that
William P. Browning suffers from a behavioral abnormality that makes him likely to engage in a
predatory act of sexual violence?" The charge also defined behavioral abnormality in accordance
with the statute: "Behavioral abnormality means a congenital or acquired condition that by affecting
a person's emotional or volitional capacity predisposes the person to commit a sexually violent
offense to the extent that a person becomes a menace to the health and safety of another person." 
We hold that this broad-form submission encompassed the required lack-of-control determination. 
A finding that a person suffers from an emotional or volitional defect so grave as to predispose him
to threaten the health and safety of others with acts of sexual violence entails a determination that
he has "serious difficulty in controlling behavior." Cf. Mullens, 92 S.W.3d at 884-87 (evidence
relating to defined abnormality legally sufficient to prove serious difficulty in controlling behavior).

 Crane undoubtedly requires a lack-of-control determination to be made by the jury. 
However, it does not require that determination to be made in a specific, independent finding. See
In re Detention of Harry Cain, No. 5-02-0088, 2003 Ill. App. LEXIS 758, at *10-12 (Ill. App. Ct.
June 18, 2003). We overrule Browning's second issue.

Vagueness and Separation of Powers

 As discussed above, if the jury finds that the person is a sexually violent predator, the 
court is required to commit the person for outpatient treatment and supervision to be coordinated by
a case manager and to impose on the person certain requirements "necessary to ensure the person's
compliance with treatment and supervision and to protect the community." See Tex. Health & Safety
Code Ann. §§ 841.081-.082. Among other things, the court must include in its order provisions:



 requiring the person's participation in a specific course of treatment;

 requiring the person to submit to tracking under a particular type of tracking
service and to any other appropriate supervision; [and] . . . 

 [imposing] any other requirements determined necessary by the judge.




Id. § 841.082(a)(4), (5), (9). (11)
 Browning argues that the above three enumerated statutory requirements are
unconstitutionally vague. He also argues that the third--giving the court the power to impose on
him any requirement it deems necessary--violates the separation-of-powers provision of the Texas
constitution. See Tex. Const. art. II, §1.

 We begin our analysis of these issues by presuming that the statute is constitutional. 
See Texas Pub. Bldg. Auth. v. Mattox, 686 S.W.2d 924, 927 (Tex. 1985); Ex parte Anderson, 902
S.W.2d 695, 698 (Tex. App.--Austin 1995, pet. ref'd). The burden rests on Browning to establish
the statute's unconstitutionality. Mattox, 686 S.W.2d at 927.

 A statute is unconstitutionally vague if it either forbids or requires the doing of an act
in terms that require persons of common intelligence to guess at its meaning. Connally v. General
Constr. Co, 269 U.S. 385, 391 (1926); Cotton v. State, 686 S.W.2d 140, 141 (Tex. Crim. App.
1985).

 Browning first argues that section 841.082(a)(5)--requiring him to submit to tracking
under a particular type of tracking service or other appropriate supervision--is void for vagueness. 
He claims "[t]his requirement implies that [Browning] will be prohibited from going certain places
or being in certain areas; however, the prohibited places or areas are not specified, leaving
[Browning] uncertain as to what conduct is expected of him."

 We note initially that section 841.082 is not a general prohibition applicable to the
public. It is specifically applicable to the crafting of commitment orders for persons who have been
adjudicated sexually violent predators, and it only applies to Browning after the court has crafted
such an order. Once the court had set out the requirements in its order, Browning had specific notice
of what was required. See Mullens, 92 S.W.3d at 888. 

 We reject Browning's contention that the tracking requirement implies that there will
be certain areas--unspecified in the court's order--that Browning will be prohibited from going. 
The order does prohibit Browning from leaving the state without prior court permission and from 
coming within 1000 feet of "premises where children commonly gather, including a school, day-care
facility, playground, public or private youth center, public swimming pool, or video arcade facility." 
Browning does not argue that these requirements are vague, and we see no reason to assume or
"infer" that the tracking requirement itself means that there exist unspecified zones that Browning
can be punished for entering.

 Browning's attack on section 841.082(a)(4)--requiring his participation in a "specific
course of treatment"--is slightly different. He argues that to survive a vagueness challenge, either
the statute or the order must "specify in what treatment [Browning] must participate," and that it was
therefore impermissible for the court to "delegate[] the responsibility of determining the specifics
of the treatment to the case manager." As with the tracking issue, we note that once the court had
set out the requirement in its order, Browning did have specific notice of what was required of him. 
See id. He was to participate in a specific course of treatment, to be determined by a case manager
employed by or under contract with the interagency council on sex offender treatment. A statute is
not vague simply because its words or phrases are not specifically defined. See Morgan v. State, 557
S.W.2d 512, 514 (Tex. Crim. App. 1997). The fact that the trial court allows professionals to
determine Browning's specific course of treatment does not render the statute unconstitutionally
vague.

 Although he does not specifically brief the point, Browning's true argument seems
to be that the statute and order constitute an impermissible delegation of legislative or judicial
authority to the interagency council on sex offender treatment. In this regard, we note that to
delegate the authority to determine a specific course of treatment for a person suffering from a
behavioral abnormality to an agency equipped to specifically tailor, and change as needed, the
person's treatment plan strikes us as being highly appropriate. Cf. Salmons v. State, 571 S.W.2d 29,
30 (Tex. Crim. App. 1978).

 Browning claims that section 841.082(a)(9)--allowing the court to impose any
additional commitment requirements that it deems necessary--is unconstitutionally vague (12) and
violates the separation-of-powers provision of the Texas constitution. See Tex. Const. art. II, §1. 

 The power to pass laws and to revise the criminal law of Texas is vested in the
legislature. Id. art. III, § 1; See Beasley, 95 S.W.3d at 609 (citing Tex. Const. art. III, §§ 30, 43). 
The separation-of-powers provision of the Texas constitution provides:


The powers of the Government of the State of Texas shall be divided into three
distinct departments, each of which shall be confided to a separate body of
magistracy, to wit: Those which are Legislative to one; those which are Executive to
another; and those which are Judicial to another; and no person, or collection of
persons, being of one of these departments, shall exercise any power properly
attached to either of the others, except in the instances herein expressly permitted. 



Id. art. II, § 1. 

 Browning reasons that because the court may impose on him any commitment
requirements it deems necessary under section 841.082(a)(9), and because section 841.085 makes
violation of such requirements a criminal offense, that the legislature has therefore impermissibly
conferred upon the judiciary the power to "create new criminal laws." We disagree. 

 The legislature itself set forth in great detail the procedures and substantive criteria
for subjecting a person to civil commitment. See Tex. Health & Safety Code Ann. §§ 841.001-.147. 
Recognizing the need for flexibility in administering a civil-commitment scheme on an outpatient
basis, the legislature has authorized trial courts to order requirements necessary to ensure the
compliance of the committed person with treatment and supervision and to protect the community.
See id. § 841.082(a)(9). Because it is the legislature, and not the courts, that has determined that
violations of any of the statutory commitment requirements--including those requirements specified
by the judge--are criminal violations, there is no separation-of-powers problem. See Beasley, 95
S.W.3d at 609.

 Neither the statute nor the order itself is vague in its requirements. Additionally,
sections 841.082(a)(9) and 841.085 do not create separation-of-powers problems. We overrule
Browning's third issue.


Relevance of Prior Convictions

 In his sixth issue, Browning argues that "[a]dmitting evidence regarding appellant's
prior convictions was error when appellant stipulated to said convictions." He claims that evidence
admitted relating to his former convictions--including department of criminal justice records--was
not relevant, see Tex. R. Evid. 401, and, if relevant, its probative value was substantially outweighed
by the risk of unfair prejudice, see id. 403.

 We review a trial court's decision to admit or exclude evidence for an abuse of
discretion. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). Evidence is
relevant if it has "any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the evidence." 
Tex. R. Evid. 401. Relevant evidence is admissible except as otherwise provided by constitution,
statute, rule of evidence, or other rule prescribed by statutory authority. See Tex. R. Evid. 402. Browning's argument that the evidence relating to his prior conviction is irrelevant
is predicated on his characterization of the statute's prior-conviction requirement as "jurisdictional." 
However, in our discussion of the civil nature of the proceedings, we have held that the required
proof of prior convictions is evidentiary, not jurisdictional. We explained that a person's history of
sexually violent conduct is highly relevant to whether he suffers from a behavioral abnormality that
makes it difficult for him to control his impulses to commit sexually violent offenses. Moreover,
because of its evidentiary importance, we cannot say that the trial court abused its discretion by
failing to rule that any "unfair prejudice" raised by his prior convictions substantially outweighed
its probative value.


CONCLUSION


 Title 11, chapter 841 of the health and safety code is a civil statute. Browning was
therefore not entitled to the constitutional safeguards attendant to a criminal proceeding. Moreover,
the challenged portions of the statute are not unconstitutionally vague nor do they violate separation-
of-powers principles. Having overruled all of Browning's issues, we affirm the trial court's final
judgment and order of civil commitment.



 

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: August 14, 2003

1. The order of civil commitment was signed by the Honorable Lee G. Alworth of the 284th
District Court in Montgomery County. Pursuant to statute, jurisdiction over the cause was
immediately transferred to the district courts of Travis County, the county in which William
Browning will reside. See Tex. Health & Safety Code Ann. § 841.082(c) (West 2003). The notice
of appeal was originally filed with the Travis County district clerk, who forwarded the notice to the
Court of Appeals for the Ninth District, which includes Montgomery County in its jurisdiction. See
Tex. Gov't Code Ann. § 22.201(j) (West 1998). The clerk presumably made this choice because the
order under review was signed by a Montgomery County district judge. The supreme court,
however, transferred the appeal to this Court because the Travis County district court has had
jurisdiction since the transfer of the case; Travis County is within this Court's jurisdiction. See id.
§ 22.201(d) (West 1998).
2. The statutory definition is slightly more nuanced than this description. Specifically, it
provides: 


A person is a repeat sexually violent offender for the purposes of this chapter if
the person is convicted of more than one sexually violent offense and a sentence
is imposed for at least one of the offenses or if:


(1) the person:


 (A) is convicted of a sexually violent offense, regardless of whether the
sentence for the offense was ever imposed or whether the sentence was
probated and the person was subsequently discharged from community
supervision; 


 (B) enters a plea of guilty or nolo contendere for a sexually violent offense
in return for a grant of deferred adjudication;


 (C) is adjudged not guilty by reason of insanity of a sexually violent
offense; or 


 (D) is adjudicated by a juvenile court as having engaged in delinquent
conduct constituting a sexually violent offense and is committed to the
Texas Youth Commission under Section 54.04(d)(3) or (m), Family
Code; and


(2) after the date on which under Subdivision (1) the person is convicted,
receives a grant of deferred adjudication, is adjudged not guilty by reason of
insanity, or is adjudicated by a juvenile court as having engaged in
delinquent conduct, the person commits a sexually violent offense for which
the person:


 (A) is convicted, but only if the sentence for the offense is imposed; or 


 (B) is adjudged not guilty by reason of insanity.


Tex. Health & Safety Code Ann. § 841.003 (West 2003).
3. The multidisciplinary team--established jointly by the executive director of the department
of criminal justice and the commissioner of the department of mental health and mental
retardation--consists of the following:



 two persons from the department of mental health and mental retardation; 

 three persons from the department of criminal justice, one of whom must be
from the victim services office of that department;

 one person from the department of public safety; and 

 one person from the interagency council on sex offender treatment.



See id. § 841.022(a) (West 2003). 
4. Section 841.004 provides that "[a] special division of the prison prosecution unit, separate
from that part of the unit responsible for prosecuting criminal cases, is responsible for initiating and
pursuing a civil commitment proceeding under this chapter." Id. § 841.004 (West 2003).
5. A case manager is defined as a person employed by or under contract with the interagency
council on sex offender treatment to perform duties related to outpatient treatment and supervision
of a person committed as a sexually violent predator. See id. §§ 84.002(3), (4) (West 2003).
6. The experts who testified in this case based their diagnoses of Browning on his conduct as
revealed in his criminal records as well as personal interaction with Browning in the form of
interviews and tests. 
7. Browning makes a curious argument on this point. He claims:


These prior convictions are not received for evidentiary purposes, because the
focus at trial should be whether the person currently has a behavioral abnormality
or not. Focusing on past convictions should not be relevant to determining if the
person presently has a behavioral abnormality. Therefore the purpose of
requiring the prior convictions is solely for retribution against those who have the
prerequisite convictions.


We agree with Browning that the focus at trial should be whether the person currently suffers from
a behavioral abnormality. However, we strongly disagree with his contention that a person's history
of sexual violence is not relevant to determining if the person presently has a behavioral abnormality. 
8. Moreover, "[t]hat the State has chosen not to apply the [statute] to the larger class of
mentally ill persons who might be found sexually dangerous does not somehow transform a civil
proceeding into a criminal one." Allen v. Illinois, 478 U.S. 364, 370 (1986) (discussing requirement
that criminal charges be brought against someone before he becomes eligible for civil commitment 
under somewhat similar Illinois statute).
9. Browning also argues that section 841.085 is retributive because the statute criminally
punishes a person for prior criminal conduct. He reasons that "[i]f a person had not engaged in the
prior criminal conduct, that person could not be punished per this criminal clause because that person
could not be civilly committed per the statute." We are not moved by this argument. Section
841.085 punishes violations of the requirements in the commitment order only, not any prior
criminal conduct. See In re the Commitment of Mullens, 92 S.W.3d 881, 884 (Tex.
App.--Beaumont, 2002, no pet. h.).
10. In his fourth and fifth issues, Browning argues that his Fifth Amendment privilege against
self incrimination was violated: (1) when he was interviewed by Dr. Woodrick and Dr. Bailey, both
of whom testified at trial; and (2) when he was required to submit to a deposition, portions of which
were admitted as evidence at trial. Because we have held this proceeding to be civil and not
criminal, Browning did not have a Fifth Amendment privilege to refuse to answer any questions at
all. See Allen, 478 U.S. at 368, 375. Browning nonetheless has a Fifth Amendment privilege not
to answer official questions put to him in any proceeding, civil or criminal, formal or informal,
where the answers might incriminate him in future criminal proceedings. Id. at 368 (quotation
omitted). However, blanket assertions of the privilege in civil cases are impermissible. In re Speer,
965 S.W.2d 41, 46 (Tex. App.--Fort Worth 1998, orig. proceeding); see Mullens, 92 S.W.3d at 888. 
Instead, the privilege must be asserted on a question-by-question basis. See Mullens, 92 S.W.3d at
888; Speer, 965 S.W.2d at 46. Because Browning did not assert his Fifth Amendment privilege on
a question-by-question basis as he was required to in this civil proceeding, he did not preserve error
on this issue. Browning also argues in his fifth issue that introduction of his deposition testimony
at trial violated his equal-protection rights. However, he did not raise this issue at the trial court and
therefore failed to preserve it for our review. See Tex. R. App. P. 33.1(a); Dreyer v. Greene, 871
S.W.2d 697, 698 (Tex. 1993). We overrule Browning's fourth and fifth issues.
11. The court imposed the first two requirements in its final judgment and order of civil
commitment in the following language:



 WILLIAM P. BROWNING shall participate in a specific course of
treatment, determined by the Interagency Council;

 WILLIAM P. BROWNING shall submit to tracking by GPS electronic
monitor provided by the Texas Department of Public Safety[.]



The court also imposed several additional requirements that it deemed necessary, ordering among
other things that:


WILLIAM P. BROWNING shall:



 submit to periodic monitoring with a polygraph and plethysmograph as directed by the
case manager;

 not possess, own, or drive a motor vehicle. . . . ; [and]

 provide appropriate blood and hair samples to allow his inclusion in the DNA Data
Bank maintained by the State of Texas . . . [.]


12. As with the other two provisions Browning challenges for vagueness, Browning had
sufficient notice of what was required of him once the court issued its order. Browning does not
claim that the additional requirements imposed by the court are themselves vague. We therefore
reject Browning's contention that 841.082(a)(9) is void for vagueness. See Mullens, 92 S.W.3d at
888 ("Once [the] terms or requirements are set out in the order, the person has specific notice of what
is required"); Beasley v. Molett, 95 S.W.3d 590, 609 (Tex. App.--Beaumont 2002, pet. filed)
("[T]hat different judges might establish different specific requirements does not render those
requirements necessarily vague after they are issued and subject to compliance.").